# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REAL WORLD MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE DAILY CALLER, INC.;<br>DOES 1-20,<br><br>Defendants. | **Civil Action No. 1-23-cv-01654-JDB**<br><br><br>**ORAL HEARING REQUESTED** |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO REFER PLAINTIFF'S REGISTRATIONS TO THE REGISTER OF COPYRIGHTS PURSUANT TO SECTION 411(b)(2) OF THE COPYRIGHT ACT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................... 3

III.   DAILY CALLER'S MOTION IS PROCEDURALLY IMPROPER ........................... 5

IV.   DAILY CALLER DID NOT AND CANNOT SATISFY SECTION 411(B)(1) .......... 8

     A.    The Registrations Were Not Submitted with Inaccuracies ................................. 9

          1.    The Works Are Not Compilations ........................................................... 9

          2.    The Works Were Not Published at the Time of Registration ................ 13

     B.    Daily Caller Has Not Established that Any Errors Were Made "Knowingly" .. 15

          1.    Section 411(b)(1) Requires "Actual, Subjective" Knowledge .............. 16

          2.    The Line Between Compilations and Derivative Works is Blurry ......... 17

          3.    The Question of When Online Works Are "Published" Under the Copyright Act Is Notoriously Complex, So Much So that the Copyright Office Has Not Yet Expressed a Position on the Question ................... 18

V.    THE RELIEF THE DAILY CALLER SEEKS IS INAPPROPRIATE ...................... 21

VI.   CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

CASES

*Archie MD, Inc. v. Elsevier, Inc.*,
    261 F. Supp. 3d 512 (S.D.N.Y. 2017) ........................................................... 21

*Ashton v. Copyright Office*,
    310 F. Supp. 3d 149 (2018).......................................................................... 12

*\*Atari Games Corp. v. Oman*,
    979 F.2d 242 (D.C. Cir. 1992) ............................................................... 11, 12

*Batjac Prods. Inc. v. Goodtimes Home Video Corp.*,
    160 F.3d 1223 (9th Cir. 1998)...................................................................... 10

*Beatriz Ball L.L.C. v. Barbagallo Co., LLC*,
    40 F.4th 308 (5th Cir. 2022) ................................................................. *passim*

*Brunson v. Cook*,
    No. 3:20-cv-01056, 2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ................. *passim*

*Burrow-Giles Lithographic Co. v. Sarony*,
    111 U.S. 53 (1884) ..................................................................................... 11

*Cannon v. District of Columbia*,
    717 F.3d 200 (D.C. Cir. 2013) .....................................................................7

*Chin-Teh Hsu v. New Mighty U.S. Trust*,
    No. 10-1743 (JEB), 2020 WL 588322 (D.D.C. Feb. 6, 2020)................... 6, 16

*\*DeliverMed Holdings, LLC v. Schaltenbrand*,
    734 F.3d 616 (7th Cir. 2013)............................................................. 5, 6, 7, 8

*Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*,
    304 F. Supp. 3d 1052 (D. Kan. 2018)........................................................ 5, 6

*Feist Publications v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ................................................................................... 12

*FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*,
    No. 18-232 (JRT/HB), 2022 WL 891473 (D. Minn. Mar. 25, 2022)............... 19

*Indian River Cnty. v. Rogoff*,
    254 F. Supp. 3d 15 (D.D.C. 2017) .............................................................. 22

*King-Devick Test Inc. v. NYU Langone Hosps.*,
    No. 17-CV-9307 (JPO), 2019 WL 3071935 (S.D.N.Y. July 15, 2019) ...........6

*Lieb v. Korangy Pub'g, Inc.*,
    No. CV 15-0040 (AYS), 2022 WL 1124850 (E.D.N.Y. Apr. 14, 2022)........ 20

*\*Maljack Prods., Inc. v. UAV Corp.*,
    964 F. Supp. 1416 (C.D. Cal. 1997)................................................. 10, 11, 12

*Nat'l Assn. of Home Builders v. Salazar*,
   827 F. Supp. 2d 1 (D.D.C. 2011) .................................................................. 22

*Olem Shoe Corp. v. Washington Shoe Co.*,
   No. 09–23494–CIV, 2010 WL 3505100 (S.D. Fla. Sept. 3, 2010) ........................... 6, 21

*Palmer/kane LLC v. Gareth Stevens Publ'g*,
   No. 1:15-cv-7404-GHW, 2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016) ................... 6, 8

*Pharm. Research & Mfrs. Of Am. V. U.S. Dep't of Health & Human Servs.*,
   43 F. Supp. 3d 28 (D.D.C. 2014) ................................................................... 7

*ReportHost LLC v. Spectora Inc.*,
   No. 22-cv-00457-DDD-SKC, 2023 WL 2782285 (D. Colo. Mar. 29, 2023) ............... 20

*Ronaldo Designer Jewelry, Inc. v. Cox*,
   No. 1:17-CV-2-DMB-DAS, 2019 WL 1795935 (D. Miss. Apr. 24, 2019) ................... 7

*Shively v. Bozanich*,
   31 Cal. 4th 1230 (2003) ............................................................................. 14

*\*Unicolors v. H&M Hennes & Mauritz, L.P.*,
   595 U.S. 178 (2022) ............................................................................. *passim*

*\*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   52 F.4th 1054 (9th Cir. 2022).................................................................. *passim*

*Zalewsky v. Cicero Builder Dev. Inc.*,
   754 F.3d 95 (2d Cir. 2014) ........................................................................ 17

## FEDERAL STATUTES

17 U.S.C. § 101 .......................................................................... 10, 11, 13, 14

17 U.S.C. § 103 ...................................................................................... 10

17 U.S.C. § 410(c) ................................................................................... 1

17 U.S.C. § 411(a) ................................................................................. 21

*17 U.S.C. § 411(b) .......................................................................... *passim*

17 U.S.C. § 411(b)(1) ....................................................................... *passim*

17 U.S.C. § 411(b)(1)(A) .................................................................. 5, 15, 17

17 U.S.C. § 411(b)(2) ....................................................................... *passim*

## FEDERAL REGULATIONS

37 C.F.R. § 202.4(c)(3) ........................................................................... 10

OTHER AUTHORITIES

Resp. of the Register of Copyrights, *Bueno v. Behamou*, Case No. 2:21-cv-04595-JVS (SPx) (C.D. Cal. June 30, 2022) (Dkt. 74-1) .......................................................................... 14

Resp. of the Register of Copyrights, *Olem Shoe Corp. v. Washington Shoe Co.*, Case No. 1:09-cv-23494-CIV-HUCK/O'SULLIVAN (S.D. Fla. Oct. 14, 2010) (Dkt. 209) ......... *passim*

Rest. Copyright § 4, comms. c and d (2022) ........................................................................ 17

Shira Perlmutter, Register of Copyrights, Ltr. to Sen. Thom Tillis on Publication Study at 1–5 (Dec. 1, 2021) ......................................................................................................... 19

The Compendium of U.S. Copyright Office Practices,
COMPENDIUM (THIRD) § 508.1 ................................................................................. 10
COMPENDIUM (THIRD) § 1008.3(A) .......................................................................... 14

*U.S. Copyright Office, Online Publication, 84 Fed. Reg. 66328-01, 66328 (Dec. 4, 2019)14, 19

U.S. Copyright Office, "Online Publication," https://copyright.gov/rulemaking/online-publication/ ...................................................................................................................... 18

William F. Patry, 2 PATRY ON COPYRIGHT § 3:64 (Sept. 2023 update) .................................. 10

### I.      INTRODUCTION

Plaintiff Real World Media, LLC ("RWM") is an investigative journalism outfit of just one person. That one person—who is not a lawyer—creates and produces original audiovisual works of reporting, and registers those works with the Register of Copyrights to the best of his abilities and knowledge as unpublished, derivative audiovisual works.  RWM has registered its works this way for years, and during that time the Copyright Office has consistently registered RWM's works, issuing to RWM many certificates of copyright registration.  Under the Copyright Act, those certificates of registration "constitute prima facie *evidence of the validity* of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c) (emphasis added).

The Daily Caller, Inc. ("Daily Caller") does not deny brazenly copying RWM's works. Instead, it seeks to derail this litigation at the outset by prematurely and baselessly moving under 17 U.S.C. § 411(b)(2) to refer RWM's registrations to the Register of Copyrights (the "Register"), even though it has not and cannot show that RWM's registration applications contained inaccuracies, much less that RWM submitted applications *with actual knowledge* of those purported inaccuracies, as is required by 17 U.S.C. § 411(b) and the United States Supreme Court's decision in *Unicolors v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 185 (2022).

Daily Caller has not filed an answer to RWM's Complaint.  No written discovery has been served or answered. No documents have been produced.  No depositions have been taken. Despite that, Daily Caller thinks it can establish not only that RWM's copyright registration applications contained errors, but that RWM *knowingly* submitted applications with those purported errors.  Daily Caller's motion is an attempt to inject delay into these proceedings and to frustrate the efficient resolution of RWM's claims.

Recognizing the potential for copyright infringement defendants to abuse Section 411(b)(2) by moving to refer copyright registrations to the Register of Copyrights when there is no basis for such a motion, nearly every court requires movants to *first* establish the two prongs of Section 411(b)(1) by showing that the registrations at issue (a) contained errors, and (b) that the registrant submitted the registrations with knowledge of the inaccuracies.  That is why courts

almost always consider referring registrations to the Register *after* the parties have completed substantial discovery, and frequently, as in *Unicolors*, not until after trial of the underlying claims. The Register of Copyrights herself has endorsed this approach. Daily Caller's Motion ignores these authorities, and instead relies on an aberrational case from the District of Mississippi that is not even consistent with the law of the Fifth Circuit where that District Court sits.

Daily Caller appears to recognize that its motion is premature and meritless. Instead of citing to evidence supporting the two prongs of Section 411(b)(1), it floods this Court with *hundreds of pages* of Copyright Office guidance and website screenshots irrelevant to the question of whether RWM knowingly submitted inaccurate registration applications. RWM does not dispute that there are many sources of purported guidance regarding registration requirements and Copyright Act statutory definitions. However, RWM *does* dispute that those resources indicate that RWM's works (a) are compilations, and (b) were published prior to registration. RWM also disputes that it knowingly misrepresented any facts in its applications.

In *Unicolors* the Supreme Court recognized that the questions of whether a work is "published" under the Copyright Act and whether it is a compilation or a derivative work are precisely the sort of "esoteric" legal issues on which laypersons are likely to make mistakes. *Unicolors,* 595 U.S. at 185. And the Supreme Court held that even if such mistakes exist in copyright application materials, they cannot invalidate the associated copyright registrations unless the applicant had "*actual knowledge*" of the inaccuracy when it submitted the information to the Copyright Office." *Id.* (emphasis added). The Court stressed that this actual knowledge requirement reflects Congress's decision to avoid the harsh results of invalidation for "often esoteric[] legal mistakes" regarding notoriously technical aspects of copyright law. *Id.* In enacting Section 411(b) and requiring actual knowledge, Congress recognized that copyright infringers lacking any substantive defense often tried "to exploit [any] potential loophole" in copyright law in an attempt to avoid responsibility for their misconduct. *Id.* at 187.

Although RWM maintains that its copyright registrations are accurate, *Unicolors* is clear that—even if RWM *had* made mistakes regarding the publication status of its works and whether they are compilations or derivative works—those errors would not invalidate its registrations. RWM files concurrently with this Opposition the declaration of its principal, Jay Horowitz, which conclusively establishes that RWM did not knowingly provide false information to the Copyright Office.

Daily Caller's motion should be denied for three independent reasons. First, it is premature and procedurally improper. Even if it were not premature, Daily Caller cannot make the necessary substantive showing to warrant referral of RWM's copyrights to the Register of Copyrights, particularly in light of *Unicolors*. Second, the Daily Caller has not and cannot show that the registrations at issue contain inaccuracies. Third, it has not shown and cannot show that, even if they do contain inaccuracies, RWM submitted the registration applications with actual knowledge of those inaccuracies. Referral to the Register would be an improper waste of time and resources contrary to the decisional law of nearly every court in the United States.

## II.    FACTUAL BACKGROUND

At issue in this case are fourteen creative audiovisual works registered to RWM. *See* Compl., Appendix A (the "Works"). RWM is an investigative journalism organization that produces original video news stories covering, as relevant here, law enforcement and crime. *Id.* ¶ 8. To create its videos, RWM identifies newsworthy events and obtains exclusive information and records—including video footage—associated with those events, typically from law enforcement agencies. *Id.* ¶ 13. As part of its creative editorial process, RWM then extensively edits, transforms, and annotates that footage, transforming it into a unique work that tells the story of the particular event. *Id.*

RWM has one employee: its principal, Jay Horowitz. Declaration of Jay Horowitz in Support of Plaintiff's Opposition to Defendant's Motion to Refer to Plaintiff's Copyrights to the Register of Copyrights ("Horowitz Decl.") ¶ 1. Mr. Horowitz is not an attorney, has never attended law school, and has never taken law school courses. *Id.* ¶ 2. Mr. Horowitz has applied

for and obtained from the Copyright Office copyright registrations for each of the Works using the Group Registration of Unpublished Works (or, "GRUW") application. *Id.* ¶¶ 3–4; *see* Decl. of Rachel Fertig in Support of Defendant The Daily Caller, Inc.'s Motion to Refer Plaintiff's Registrations to the Register of Copyrights ("Fertig Decl."), Exs. A, C.[1] Mr. Horowitz completed those applications and conducted any follow-up communications with the Copyright Office by himself. *Id.* Consistent with his understanding of the law at the time, based on his review of the Copyright Office's registration guidance and relevant sections of the Compendium of U.S. Copyright Office Practices, Mr. Horowitz concluded in good faith that the works were (and are) derivative works because they are based on preexisting source materials. *Id.* ¶ 5. In particular, he concluded the Works were (and are) derivative works, and that they are not compilations, because the examples of compilations provided in Compendium were so radically different from the Works. *Id.* He also concluded that they were not "published," as that term is defined by the Copyright Act, by virtue of his posting them on YouTube. *Id.* ¶ 6. The term "publication" has a very specific and narrow meaning under the Copyright Act, and the question of when an online work is "published" is a difficult one. *See infra* Sections IV.A.2, IV.B.2. In the course of registering the Works, Mr. Horowitz engaged in extensive correspondence with the Copyright Office regarding any questions or concerns the Office had about his applications. Horowitz Decl. ¶ 7; *see* Fertig Decl. Ex. B. At no point did the Copyright Office ever express concern regarding his designation of the Works as (a) derivative works, or (b) unpublished. Horowitz Decl. ¶ 7.

---

[1] Daily Caller notes in its motion that the registration number provided in the Complaint in connection with Work 13 is inaccurate. *See* Memorandum in Support of Motion to Refer Plaintiff's Registrations to the Register of Copyrights ("Memorandum") 1 n.1. Upon further review, RWM has determined that the correct registration number for that Work is PAu004163238. Horowitz Decl. ¶ 9. If necessary, RWM is willing to amend its Complaint to make this correction. In any event, Daily Caller cannot claim any prejudice through this clerical error. Notably, Daily Caller never raised this error during the parties' extensive meet and confer communications that preceded its filing of its Motion for Referral and Motion to Dismiss.

### III.    DAILY CALLER'S MOTION IS PROCEDURALLY IMPROPER

Nearly every court to address the issue has held that before referring registrations to the Register of Copyrights, courts should require the Section 411(b)(2) movant to establish the prongs of 411(b)(1) to prevent abuse of the rule.  In practice, this means that courts do not refer registrations to the Register until after the parties have completed substantial discovery and, frequently, not until after trial of the parties' underlying claims and resolution of factual disputes regarding issues such as credibility.  The Register of Copyrights herself has endorsed this approach.  It is no wonder that Daily Caller ignores these authorities completely in its motion: the parties have taken no discovery in this matter, and Daily Caller has not established and cannot establish the prerequisites for a Section 411(b)(2) motion.

The Seventh Circuit explained that courts should "demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality. . . . Once these requirements are met, a court may question the Register as to whether the inaccuracy would have resulted in the application's refusal." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013).  More recently, on remand from the Supreme Court, the Ninth Circuit held that, "Before making such a request [to the Register], a court must first establish whether the registrant had the proper 'knowledge' of the inaccuracy under § 411(b)(1)(A)."  *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1064 (9th Cir. 2022); *see also Brunson v. Cook*, No. 3:20-cv-01056, 2023 WL 2668498, at *3–4 (M.D. Tenn. Mar. 28, 2023) ("[T]his Court has agreed with other courts and the Register that courts may require a party seeking invalidation to establish the requirements of § 411(b) as a factual matter rather than issue a request to the Register based solely on the party's allegations."); *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery*, *Inc.*, 304 F. Supp. 3d 1052, 1055–56 (D. Kan. 2018) ("the party seeking invalidation of the copyright must first establish the preconditions" of Section 411(b) before referral to the Register).

For a Section 411(b)(2) movant to make the factual showing required under Section 411(b)(1), factual development is necessary.  In particular, establishing a copyright registrant's

state of mind at the time of the submission of the registrations at issue is a fact-intensive endeavor.  *See, e.g.*, *Chin-Teh Hsu v. New Mighty U.S. Trust*, No. 10-1743 (JEB), 2020 WL 588322, at *6 (D.D.C. Feb. 6, 2020) (Boasberg, J.) (citing cases).  For this reason, courts almost always consider referring registrations to the Register after trial, summary judgment motions, or at the very earliest, after the parties have completed substantial discovery.  *See, e.g.*, *Unicolors*, 52 F.4th at 1064 (considering whether to refer registrations at issue on remand from Supreme Court, after completion of jury trial); *Beatriz Ball L.L.C. v. Barbagallo Co., LLC*, 40 F.4th 308, 316 (5th Cir. 2022) (considering referral on appeal after full bench trial); *DeliverMed Holdings*, 734 F.3d at 625 (considering referral on appeal after 14-day trial); *Brunson*, 2023 WL 2668498, at *3–4 (referring questions to Register after requiring movant to refile motion at completion of discovery); *Palmer/kane LLC v. Gareth Stevens Publ'g*, No. 1:15-cv-7404-GHW, 2016 WL 6238612, at *4 (S.D.N.Y. Oct. 24, 2016) (denying motion to refer registrations to Register after substantial completion of discovery because "[t]hese factual issues require the weighing of evidence and the rendering of credibility determinations—tasks which this Court does not believe it can undertake at this stage").[2]

Courts proceed this way because they recognize that prematurely referring registrations to the Register—as Daily Caller requests this Court do here—would open the door to abuse of Section 411(b)(2).  As the Seventh Circuit explained, "[g]iven its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future. Although the statute appears to mandate that the Register get involved '[i]n any case in which inaccurate information [in an application for copyright registration] is alleged,' 17 U.S.C. § 411(b)(2), input need not be sought immediately after a party makes such a claim."  *DeliverMed Holdings*, 734 F.3d at 625; *Unicolors, Inc.*, 52 F.4th at 1064 (noting potential for abuse of

---

[2] *See also Energy Intelligence Grp.*, 304 F. Supp. 3d at 1055–56 (at summary judgment); *King-Devick Test Inc. v. NYU Langone Hosps.*, No. 17-CV-9307 (JPO), 2019 WL 3071935, at *7 (S.D.N.Y. July 15, 2019) (after completion of fact discovery); *Olem Shoe Corp. v. Washington Shoe Co.*, No. No. 09–23494–CIV, 2010 WL 3505100 (S.D. Fla. Sept. 3, 2010) (after summary judgment).

Section 411(b)(2)); *Beatriz Ball*, 40 F.4th at 316 n.5 (courts making the initial determinations under Section 411(b)(2) before referring registrations to Register supports "judicial efficiency and preserving the Register's limited resources").

Instead, as described above, courts require that the party seeking invalidation first establish the two prongs of Section 411(b)(1). "Aside from minimizing the risk that parties would use this provision as a delay tactic, this approach has the added benefit of an endorsement from the Register." *DeliverMed Holdings*, 734 F.3d at 625. The Register of Copyrights, noting the potential for litigants to abuse Section 411(b)(2), has recommended that, "before asking the Register whether she would have refused to register a copyright if she had known about a particular alleged misstatement of fact on an application, a court should feel free to determine whether there is in fact a misstatement of fact." Resp. of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 10, 12, *Olem Shoe Corp. v. Washington Shoe Co.*, Case No. 1:09-cv-23494-CIV-HUCK/O'SULLIVAN (S.D. Fla. Oct. 14, 2010) (Dkt. 209) [hereinafter *"Register's Olem* Response"].[3] Given the lack of factual development in this matter, it would be premature for this Court to conclude that there is "in fact a misstatement," much less a knowing one, in the Works' registrations.

Daily Caller cites a single unpublished case from the District of Mississippi to argue that this Court *must* refer RWM's copyright registrations to the Register based on nothing more than Daily Caller's unsupported allegations that the prongs of Section 411(b)(1) have been met. *See* Mem. 25–26 (citing *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2019 WL 1795935 (D. Miss. Apr. 24, 2019)). But the many authorities cited above demonstrate that

---

[3] *Available at* https://www.copyright.gov/rulings-filings/411/olem-shoe-corp-v-washington-shoe-co-no-1-09-cv-23494-sd-fla-oct-14-2010.pdf (last accessed Oct. 19, 2023). The Court may take judicial notice of this and any other Section 411(b)(2) responses from the Register of Copyrights, which are publicly posted on the website of the United States Copyright Office. *See Pharm. Research & Mfrs. Of Am. V. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (Contreras, J.) (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)) (stating that this Court has "frequently taken judicial notice of information posted on official public websites of government agencies").

*Ronaldo* is an extreme outlier. Indeed, Daily Caller failed to inform the Court that even the Fifth Circuit—*Ronaldo*'s own Court of Appeals—has recently prescribed the more measured and logical approach recommended by the Register and by other courts, that registrations should not be referred to the Register until the movant establishes a "deliberate misstatement." *See Beatriz Ball*, 40 F.4th at 316 n.5. After *Beatriz Ball*, it is doubtful that *Ronaldo* remains good law on the issue for which Daily Caller cites it.

Daily Caller's motion exemplifies the Section 411(b)(2) gamesmanship of which prior courts have warned. Consistent with those warnings, the authorities recommend that rather than rush to grant a Section 411(b)(2) motion based on unsupported allegations, "courts should tread carefully and employ this mechanism only when necessary." *DeliverMed Holdings*, 734 F.3d at 625; *see also Brunson*, 2023 WL 2668498, at *3–4 ("the Court will evaluate Defendants' request in light of the factual record and will not act merely on the allegations as stated in their Motion"). No factual record exists here because no discovery has been taken. Neither party has produced any documents, answered any interrogatories, or taken any depositions. For this reason alone, the Court should deny Daily Caller's motion.[4]

## IV.    DAILY CALLER DID NOT AND CANNOT SATISFY SECTION 411(b)(1)

As set forth above, Daily Caller's motion is premature and should be denied outright as procedurally improper. But even if the motion was not premature, it should be denied as a substantive matter. Section 411(b)(1) provides that a registration is valid *unless* it (1) contains inaccuracies that, if known, would have caused the Register to refuse registration, and (2) those inaccuracies were included on the registration application "with knowledge" that they were

---

[4] At a minimum, the Court should deny the motion without prejudice to reconsidering referral at a more appropriate time, after the parties have developed a factual record and the factfinder has resolved any factual disputes, including making any credibility determinations. *See Brunson*, 2023 WL 2668498, at *3–4; *Palmer/kane LLC*, 2016 WL 6238612, at *5; *see also Olem* Resp. at 11 ("The Register suggests that, at a minimum, the court retains the power to delay the request until a factual record has been developed.").

inaccurate.  17 U.S.C. § 411(b)(1).  Daily Caller has not satisfied and cannot satisfy either prong of Section 411(b)(1), let alone both prongs.

First, RWM's copyright registrations for the Works at issue do not contain inaccuracies. Second, even if they did contain inaccuracies, RWM did not submit the registrations with knowledge of those inaccuracies.  The Supreme Court has held that in such circumstances, copyright registrations cannot be invalidated.  *See Unicolors*, 595 U.S. at 182.

Thus, there is no basis for referring RWM's registrations to the Register of Copyrights. *See, e.g.*, *Beatriz Ball*, 40 F.4th at 316 n.5 (5th Cir. 2022) (referral to Register of Copyrights not required where misstatements on registration application were made unknowingly); Register's *Olem Resp.* at 11–12 ("If the court concludes that there is no factual basis for certain allegations . . . the court might come to a conclusion on such issues as a matter of law, in which case there may be no need to refer the question to the Register.").

### A.  The Registrations Were Not Submitted with Inaccuracies

If there are no inaccuracies in the registrations, there is no basis to refer them to the Register of Copyrights.  *See* 17 U.S.C. § 411(b).  Daily Caller accuses RWM of submitting the registrations at issue with two errors.  First, Daily Caller claims that the works at issue are "compilations," which are not eligible for registration using the GRUW application that RWM used.  Second, Daily Caller claims that the works at issue were "published" prior to registration, which would also render them ineligible for registration via the GRUW application.  *See* Mem. 3. As set forth below, the Works are not compilations—they are derivative works, which are eligible for registration via the GRUW application.  Moreover, to the best of RWM's principal's understanding of the law, the Works were not published at the time of registration.

### 1.  The Works Are Not Compilations

RWM properly registered the works at issue as "derivative" works.  They are not compilations.  *See* Fertig Decl., Ex. A; Horowitz Decl. ¶ 5.  The Copyright Act defines "derivative works" as follows:

> [A] work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.  Derivative works are copyrightable.  17 U.S.C. § 103.  Examples of derivative works include "a derivative work created by compiling multiple scenes from prior Charlie Chaplin movies," "a sped-up version of a video game," and "pan and scan" versions of films in which the creator of the work can "vary the speed with which the 'camera' pans" and "zero in on specific features."  *Maljack Prods., Inc. v. UAV Corp.*, 964 F. Supp. 1416, 1426–27 (C.D. Cal. 1997), *aff'd sub nom Batjac Prods. Inc. v. Goodtimes Home Video Corp.*, 160 F.3d 1223 (9th Cir. 1998), (citing cases).  Registrants can use the GRUW application to register derivative works.  37 C.F.R. § 202.4(c)(3) (the group registered via GRUW application "may include individual works, joint works, or derivative works").

Compilations, in contrast, are defined as "work[s] formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged."  17 U.S.C. § 101.  Examples include periodicals, anthologies, encyclopedias, and other collective works.  *Id.*  The Compendium of U.S. Copyright Office Practices ("Compendium")—on which Daily Caller relies heavily—provides the following examples of copyrightable compilations: a "directory of services for a particular region," a "list of the best short stories of 2014," a "collection of the best sound recordings of 1985," an "academic journal containing articles on a particular topic," and a "newspaper comprised of articles by different journalists."  COMPENDIUM (THIRD) § 508.1; *see also* William F. Patry, 2 PATRY ON COPYRIGHT § 3:64 (Sept. 2023 update) (compilations consist of periodicals, anthologies, tests, surveys, and compilations of "uncopyrightable individual elements, such as data").  Unlike derivative works, compilations cannot be registered via the GRUW application.  37 C.F.R. § 202.4(c)(3).

RWM's Works are nothing like the many examples of compilations the Copyright Act, Copyright Office guidance, and treatises on copyright provide. The Works are not collections of discrete items—like short stories or facts—that RWM simply selected and arranged in a particular order. Rather, they are "arrangements" of pre-existing audiovisual footage that RWM extensively edits and annotates, transforming the underlying footage into new works that tell the stories of the events they depict. *See* 17 U.S.C. § 101 (defining derivative works); Compl. ¶ 13. The Works are much more like the derivative works in *Maljack Productions*, in which motion pictures were "panned and scanned" by changing the aspect ratios of the film, and "remixing, resequencing, sweetening, equalizing, balancing, and stereoizing" the film's soundtrack. 964 F. Supp. at 1418. But here, the Works contain far more creative transformation than the "pan-and-scan" works at issue in *Maljack*. RWM does not just change aspect ratios or remix soundtracks; for most RWM works, RWM makes *hundreds* of creative edits and editorial decisions, including which audio and video source footage to use at which moment, which camera angle to use at different times, whether and how much to crop footage, which details to focus on, and more. *See* Compl. ¶ 13. But Daily Caller ignores these allegations, and instead misleadingly suggests that all RWM did to create the Works is "select[] and arrange[]" the underlying footage. *See* Mem. 23. The Works are not compilations just because Daily Caller insists that they are.

Daily Caller's logic would turn nearly every audiovisual work or photograph into a compilation—an absurd proposition. Just because a creative process includes "selection" and "sequencing" or "arranging" does not mean the resulting work is a "compilation." For example, in explaining why a particular video game was copyrightable, the D.C. Circuit described the creation of the game's "trajectory": "Atari created this motion by *selecting* and *arranging* the graphic elements in individual screens and then *selecting* and *arranging* the *sequence* of those screens." *Atari Games Corp. v. Oman*, 979 F.2d 242, 246 (D.C. Cir. 1992) (emphases added). The video game at issue in *Atari* was not, however, categorized as a compilation—even though the court drew on the language underlying the copyrightability of compilations. *See id.* at 245 (noting that copyrightability of the video game as an audiovisual work was "analogous to the

compilation of facts discussed in *Feist* [*Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)[5]]," because "both involve a choice and ordering of elements"); *see also id.* at 244 (noting that an "audiovisual work is, among other requirements, 'a series of related images'").  And in *Burrow-Giles Lithographic Co. v. Sarony*, the Supreme Court similarly used language associated with "compilations" to justify conferring copyright protection on photographs: The plaintiff posed the subject in front of the camera, "*selecting* and *arranging* the costume, draperies . . . *arranging* the subject so as to present graceful outlines, *arranging* and disposing of the light and shade . . . ." 111 U.S. 53, 60 (1884) (emphases added).  This District has even explicitly recognized that "courts routinely apply the creativity standard articulated in *Feist* to a variety of works, not just factual compilations."  *Ashton v. Copyright Office*, 310 F. Supp. 3d 149, 159 (D.D.C. 2018) (Mehta, J.).  The words "selection," "arrangement," and "sequence" are not unique descriptors of compilations.  To the contrary, they can be used to describe the creation process of nearly all audiovisual works. *See, e.g.*, *Maljack Prods.*, 964 F. Supp. At 1427 – 28 (describing derivative audiovisual work as a series of "artistic decisions about the composition of each frame . . . , determining which portions should stay and which should be 'chopped off'").

RWM used language that echoes the creativity standard articulated in *Feist* to describe its creative process.  But that does not mean the Works are compilations any more than the videogame at issue in *Atari* is a compilation.  The foregoing authorities show that, as a matter of law, it was accurate for RWM to register the works as derivative works.  Since derivative works may be registered via the GRUW application, there is no basis for referring this question to the Register.  *See* Register's *Olem* Resp. at 11–12 ("If the court concludes that there is no factual basis for certain allegations . . . the court might come to a conclusion on such issues as a matter of law, in which case there may be no need to refer the question to the Register.").

---

[5] In *Feist*, which concerned the copyrightability of a particular compilation of facts, "the Supreme Court extensively discussed and elucidated the creativity standard" for copyright protection.  *Atari*, 979 F.2d at 244.

## 2. The Works Were Not Published at the Time of Registration

RWM registered the works at issue as "unpublished" works, which may be registered via the GRUW application, because RWM's principal believed then (and still believes) that the works were not published at the time of their registrations based on his best understanding of "publication" under the Copyright Act. Horowitz Decl. ¶ 6. The Copyright Act defines "publication as follows:

> [T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. 101. Although some of RWM's Works were posted to YouTube prior to registration, they were not distributed to the public "by sale or other transfer of ownership, or by rental, lease, or lending." *See id.*; Horowitz Decl. ¶ 8. Nor were they posted on YouTube for the purpose of other people further distributing them in any way. 17 U.S.C. 101; Horowitz Decl. ¶ 8. And, mere public performance or display of a work does not itself constitute publication. 17 U.S.C. § 101.

Daily Caller points to two forms of "evidence" that purportedly demonstrate the Works were published prior to registration. First, Daily Caller contends that the Works *must* have been published—as defined by the Copyright Act—because RWM itself used the term "published" in its Complaint. *See* Mem. 27. Second, it contends that the YouTube Terms of Service demonstrate the Works were published. *Id.* Daily Caller is wrong.

First, RWM's use of the word "publish" in the colloquial sense in the Complaint is not an "admission" that the Works have been "published" in the technical legal sense, as defined by the Copyright Act. *See* Mem. 29. Under Copyright Law, "publication" is a term of art, as demonstrated by the fact that statute specifically defines the term. *See* 17 U.S.C. § 101. In the Compendium, the Copyright Office itself acknowledges that "[a]lthough, in the vernacular, the term 'published' has acquired broad meaning, it has a much narrower meaning as a term of art

13

within the Copyright Act." COMPENDIUM (THIRD) § 1008.3(A); *see also* U.S. Copyright Office, Online Publication, 84 Fed. Reg. 66328-01, 66328 (Dec. 4, 2019) (acknowledging that statutory definition of "publication" "diverg[es] from an intuitive and colloquial understanding" of the term, "especially with respect to works that are disseminated online" like the Works at issue here). That other substantive areas of law define the term "publish" differently further demonstrates that "publication" is a specific term of art in the copyright context. *See, e.g.*, *Shively v. Bozanich*, 31 Cal. 4th 1230, 1247 (2003) (in defamation actions, "publication occurs when the defendant communicates the defamatory statement to a person other than the person being defamed). All RWM meant by use of the term "published" in the Complaint with reference to the Works is that, in the colloquial sense, RWM *posted* the Works on its YouTube channel "Real World Police."

Second, YouTube's Terms of Service do not demonstrate that the Works were "published" under the Copyright Act. As an initial matter, Daily Caller provides no evidence—or even argument—that RWM agreed to any of the specific versions of the YouTube Terms of Service that Daily Caller submitted with its motion. *See* Mem. 28; Fertig Decl. ¶ 13. This is yet another example of why Daily Caller's motion is premature and requires factual development. Moreover, the Copyright Office has stated that "while licensing of a work *can* constitute publication as defined by the Copyright Act in *some* circumstances, it does not necessarily do so." Resp. of the Register of Copyrights at 12–13 n.41, *Bueno v. Behamou*, Case No. 2:21-cv-04595-JVS (SPx) (C.D. Cal. June 30, 2022) (Dkt. 74-1) [hereinafter, "Register's *Bueno* Response"].[6] When a work is licensed for a "limited purpose," it may not constitute publication under the Copyright Act. *Id.* The Terms of Service that Daily Caller attaches to its motion themselves contain restrictions on YouTube users' "further distribution, public performance, or public display," *see* 17 U.S.C. 101, suggesting that any license RWM *may* have granted to YouTube is a limited one. *See, e.g.*, Fertig Decl. Ex. L-4 at 3 (stating limitations on users'

---

[6] *Available at* https://www.copyright.gov/rulings-filings/411/bueno-v-benhamou-no-2-21-cv-04595.pdf (last accessed Oct. 19, 2023).

ability to "access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or other use" content on YouTube, among other restrictions). Even the case that Daily Caller relies upon—*Brunson v. Cook*, *see* Mem. 28—acknowledges that "reasons for finding publication varies [*sic*] from case to case and is fact dependent," 2023 WL 2668498, at *11 (citation omitted), further demonstrating that Daily Caller's motion is premature

Daily Caller has not carried its burden to establish that RWM inaccurately represented the publication status of the Works in its copyright applications. It therefore has not established that the questions regarding publication of the Works should be referred to the Register. *See* Register's *Olem* Resp. at 11–12.

### B. Daily Caller Has Not Established that Any Errors Were Made "Knowingly"

RWM's applications for copyright registration are accurate. However, even assuming *arguendo* that the applications contain inaccuracies, Daily Caller has no evidence that any inaccuracies were knowingly submitted to the Register. This provides a separate and independent basis on which to deny Daily Caller's motion. *See, e.g.*, *Unicolors*, 52 F.4th at 1064 ("Before making such a request [to the Register], a court must first establish whether the registrant had the proper 'knowledge' of the inaccuracy under § 411(b)(1)(A)."); *Beatriz Ball*, 40 F.4th at 316 n.5 (referral not required where misstatements on registration application made unknowingly).

In an attempt to prove RWM submitted erroneous applications with knowledge of those errors, Daily Caller misconstrues the question as whether RWM's principal knew that GRUW applications could not be used to register compilations or published works. *See* Mem. 33. That is not the question. And for that reason, neither Daily Caller's several-page explication of the GRUW requirements, *see* Mem. 6–14, nor its many pages of supporting "evidence" about the application requirements, are relevant. The question is whether RWM's principal knew that the Works at issue *were* compilations or published works at all. He did not. With the question properly framed, it is clear that Daily Caller has not and cannot make the required showing to merit referral to the Register of Copyrights, much less to invalidate the Works' registrations.

15

**1. Section 411(b)(1) Requires "Actual, Subjective" Knowledge**

Establishing that RWM had knowledge of the purported inaccuracies, as required by Section 411(b)(1)(A), is a difficult showing to make—particularly in this case, where the parties have not exchanged any discovery.  Under Section 411(b) and the Supreme Court's *Unicolors* decision, "'knowledge' means *actual*, *subjective* awareness of both the facts and the law." *Unicolors*, 595 U.S. at 185 (emphasis added).  There is no way that Daily Caller can establish the requisite level of knowledge at this stage in the litigation, because establishing this type of knowledge requires "findings of fact," as well as an inquiry into scienter and credibility determinations.  *Unicolors*, 52 F.4th at 1069; *see also Chin-Teh Hsu*, 2020 WL 588322, at *6 (question of scienter is fact-intensive; citing cases).

But even with further fact development, Daily Caller will never be able to prove that RWM knowingly submitted inaccurate copyright registration applications.  That is because RWM's principal did not believe the works were "compilations" at the time when he submitted the applications at issue.  Horowitz Decl. ¶ 5.  He still does not believe they are compilations.  *Id.* Likewise, at the time that RWM's principal submitted the applications at issue, he did not believe the Works had been "published," as that term is defined in the Copyright Act.  *Id.* ¶ 6. He still does not believe they were published, though he recognizes that the issue is complex, and he awaits clear guidance on the issue from the Copyright Office or the legislature.  *Id.* ¶ 6.

Nor can Daily Caller establish that RWM was "willfully blind" in the submission of its applications.  As demonstrated below, "[a]lthough 'willful blindness may support a finding of actual knowledge,' this case does not present a context where [RWM] has taken a legal position that egregiously misapplies a clear statute." *Unicolors*, 52 F.4th at 1069 & n.6 (finding no willful blindness as to meaning of "single unit of publication" and noting that even "the U.S. Copyright Office recently appeared to share concern that was repeatedly expressed in public feedback that the definition of 'publication' was too difficult for lay persons to parse and apply").  The Supreme Court itself held that the two errors Daily Caller accuses RWM of making concern the exact "esoteric" types of "legal mistakes" for which "Congress wanted to forgive"

16

copyright registration applicants—especially laypersons like RWM's principal. *Unicolors*, 595 U.S. at 185. And it is no wonder why. These are issues are ones that the courts and experts have wrestled with repeatedly.

### 2. The Line Between Compilations and Derivative Works is Blurry

As explained above, *supra* Section IV.A.1, the Works are derivative works, not compilations. But even if the Court were to believe that the Works are, in fact, compilations, the authorities demonstrate that the distinction between compilations and derivative works is a difficult one. The Supreme Court, in the very decision in which it held that copyright registrations are valid despite unintentional mistakes of law, described the question of whether a work is "a compilation or derivative work" as one of the legal issues that can bedevil laypersons and should not be grounds for invalidation under Section 411(b)(1)(A). *Unicolors*, 595 U.S. at 185; *see also Zalewsky v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 103 (2d Cir. 2014) ("'[D]erivative,' and 'compiled' may be useful concepts in some cases, but we reject the idea that works always fall neatly into one of these categories."); Rest. Copyright § 4, comms. c and d (2022) (distinguishing derivative works and compilations, noting "both incorporate preexisting materials" or "works of authorship"). If the Supreme Court, the Second Circuit, and the American Law Institute see the distinction as unclear, surely a layperson cannot be held to a higher standard of understanding. *See Unicolors*, 595 U.S. at 187 ("the complexity of the relevant rule" is one factor considered in determining if an applicant was willfully blind to an inaccuracy).

Daily Caller never explains why it believes that RWM knew that the Works were supposedly compilations. Nor does it point to any evidence of such knowledge. Nor can it. If Daily Caller had bothered to take discovery before bringing this motion, it would have learned that RWM's principal reviewed the statutory definitions and the relevant portions of the Compendium, and determined that the Works were derivative works. Horowitz Decl. ¶ 5. His conclusion was and remains reasonable, particularly because none of the Compendium's compilation examples (*e.g.*, service directories, short story anthologies, academic journals of

articles), *see supra* Section IV.A.1, bear any resemblance to the Works.  Especially at this early stage in the litigation, there is simply no way that Daily Caller can establish that RWM had "actual knowledge" that the Works were compilations.  There is thus no basis for referring questions about the Works being compilations to the Register.

### 3. The Question of When Online Works Are "Published" Under the Copyright Act Is Notoriously Complex, So Much So that the Copyright Office Has Not Yet Expressed a Position on the Question

At the time that RWM's principal registered the Works, he believed them to be "unpublished."  Horowitz Decl. ¶ 6.  Today, he—like many courts, commentators, and the Copyright Office itself—recognizes that the issue is complex, although he continues to believe the Works are unpublished.  *Id.*  Daily Caller's conclusory assertion that the Copyright Office "provided clear instructions . . . that published works" may not be registered via the GRUW application does nothing to demonstrate that RWM's principal *knew* the Works were published at the time he registered them.  *See* Mem. 33.  He did not.  Horowitz Decl. ¶ 6.  And even assuming *arguendo* that the Works were published at that time, the Supreme Court itself has made clear that this is exactly the type of "esoteric" "legal mistake" for which registrations should be not invalidated. *Unicolors*, 595 U.S. at 185.

In fact, the issue is so complex and confusing that the Copyright Office recently sought comment from stakeholders to help clarify the issue. *See* Online Publication, 84 Fed. Reg. 66328-01. When opening the inquiry, the Copyright Office noted that the statutory definition of "publication" is particularly difficult to apply to online works: "While the definition of 'publication' may have provided sufficient clarity when the Copyright Act was enacted in 1976, adapting this definition to the modern electronic era has proved challenging." *Id.* at 66329.  The difficulty of determining whether their works were "published" or "unpublished" such that they could use GRUW applications "place[s] significant burden on copyright applicants":

> Various individuals and groups and repeatedly expressed frustration
> to the Office regarding the difficulty in determining whether a work

18

has been published when completing copyright application forms.
Commenters to the Office have indicated that the distinction between
published and unpublished works is 'so complex and divergent from
an intuitive and colloquial understanding of the terms that it serves
as a barrier to registration, especially with respect to works that are
disseminated online.'

*Id.* at 66328. The Copyright Office also noted the "lack of consensus among courts." *Id.*

The situation is sufficiently complex and uncertain that the Copyright Office had to

extend the comment period *twice*.  *See* U.S. Copyright Office, "Online Publication,"

https://copyright.gov/rulemaking/online-publication/.  At the end of the twice-extended comment

period, the Copyright Office issued a report to Congress reiterating the complexity of the issue.

*See* Shira Perlmutter, Register of Copyrights, Ltr. to Sen. Thom Tillis on Publication Study at 1–

5 (Dec. 1, 2021) [hereinafter, "Tillis Letter"].[7]  The Copyright Office did *not* take a definitive

view in the Tillis Letter regarding whether online dissemination constitutes "publication."  *See*

*generally id.*  However, it *did* note that in response to commentors' concerns about their

registrations being invalidated due to misunderstanding whether their works were "published" at

the time of registration, the Copyright Office had submitted an amicus brief in the *Unicolors*

matter, then pending before the Supreme Court, urging the Court to hold that registrations would

not be invalidated due to unintentional mistakes of law.  *Id.* at 5–6; *see generally* Brief for

United States as *Amicus Curiae*, 595 U.S. 178 (2022).  The Copyright Office further wrote that if

the Court agreed with the Government (as it ultimately did), "then the consequences of making

an error with respect to a work's publication status will be diminished."  Tillis Ltr. at 6.

Since the issuance of the Tillis Letter, and since the Supreme Court decided *Unicolors*,

courts have *continued* to find the question of "publication"—especially for online works—

uncertain.  *See, e.g.*, *FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. 18-232 (JRT/HB), 2022

WL 891473, at *13 (D. Minn. Mar. 25, 2022) ("[W]hether the FDN Descriptions were published

[online] is unclear . . . . Furthermore, the state of the law at the time FDN submitted its copyright

---

[7] *Available at* https://www.copyright.gov/laws/hearings/Letter-on-Publication-Study-12-1-2021-FINAL.pdf (last accessed Oct. 18, 2023).

registration was uncertain and conflicting"); *ReportHost LLC v. Spectora Inc.*, No. 22-cv-00457-DDD-SKC, 2023 WL 2782285, at *3 (D. Colo. Mar. 29, 2023) ("The question of what constitutes publication in the context of this sort of mixed-use software is not clear-cut."). Daily Caller cites a single case from the District of Tennessee for the proposition that posting videos online can constitute "publication." *See* Mem. 28 (citing *Brunson*, 2023 WL 2668498). But even that decision agreed that "the reasons for finding publication varies [*sic*] from case to case and is fact dependent." *Brunson*, 2023 WL 2668498, at *11 (citation omitted).[8] And *Brunson* did not address the Copyright Office's solicitation of public comments on the online publication issue, its subsequent extensions of that comment period, or the resulting inconclusive Tillis Letter. *See generally id.*

In the face of the extensive evidence that courts and commentators find the question of "publication" confusing, *Brunson* hardly suggests that RWM knew or was "willfully blind" to the fact that the Works were published. *Brunson* cannot constitute notice to RWM's principal that the Works were published, since *Brunson* was decided *after* RWM submitted all of the applications for registration relevant to this matter. *See* Fertig Decl. Ex. A (demonstrating that applications for all of the Works were submitted prior to March 28, 2023, the date of the *Brunson* decision). Moreover, Daily Caller provides no evidence that RWM's principal was aware of *Brunson* or any of the caselaw on which it relies.

To the extent Daily Caller argues that RWM knew the Works were published because of YouTube's Terms of Service, that argument also fails. *See* Mem. 27–28. First, as noted above, Daily Caller has provided no evidence that RWM agreed to the Terms of Service it cites.

---

[8] Daily Caller misleadingly cites *Lieb v. Korangy Publishing, Inc.* to suggest that the court there was addressing the issue present here, *i.e.*, whether an applicant knowingly submitted a copyright registration application containing erroneous information about whether the work to be registered had been published before. *See* Mem. 31–32 (citing *Lieb v. Korangy Pub'g, Inc.*, No. CV 15-0040 (AYS), 2022 WL 1124850 (E.D.N.Y. Apr. 14, 2022). The issue in *Lieb* was whether the applicant improperly registered his work as an original literary work rather than a derivative work based on previously published materials. 2022 WL 1124850, at *7. The decision therefore did not address any purported errors with respect to the statutory definition of "publication."

Second, even if RWM did agree to them and was aware of their contents, knowledge that the Works were "licensed" by posting them to YouTube is not the same as knowledge that they were "published" under the Copyright Act.  *See Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 520 (S.D.N.Y. 2017) ("[K]nowledge of the fact that the animations were licensed does not entail that 'the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate.' That conclusion would require another premise: that Levine knew licensing constituted publication.").

RWM's principal did not believe the Works had been published at the time he applied for their registrations.  Horowitz Decl. ¶ 6.  Given the complexity of the issue, and given the early stage of this litigation, Daily Caller has not and cannot establish that RWM had "actual knowledge" that the Works were published.  *See Unicolors*, 595 U.S. at 187 ("the complexity of the relevant rule" is one factor considered in determining if an applicant was willfully blind to an inaccuracy).  There is no basis for referring questions about the Works' publication status to the Register, or for invalidating the registrations on these grounds.

## V.    THE RELIEF THE DAILY CALLER SEEKS IS INAPPROPRIATE

Even if the Court does conclude that Daily Caller's proposed questions (or any questions) regarding the Works' registrations should be referred to the Register of Copyrights, it need not and should not grant the totally relief Daily Caller seeks.  Even if the Register were to respond to such a referral stating that it would not have issued the registrations had it known of the alleged "inaccuracies" in the registration applications, Daily Caller is wrong that the Court must then "find [the registrations] invalid and therefore dismiss RWM's claims for failure to meet the Section 411(a) prerequisite."  *See* Mem. 35.  Indeed, the Register's opinion is not binding on this Court at all.  *See Olem Shoe Corp.*, 2010 WL 3505100, at *3 n.4 (S.D. Fla. Sept. 3, 2010) (observing that the statute does indicate whether the court must accept the advisory opinion of the Register, and noting, "it seems questionable that a district court is to be bound by the Register of Copyrights' opinion under § 411(b)(2)"); Register's *Olem* Resp. at 12 ("The Register

agrees with the Court's conclusion that a court will not be bound by the Register's response to a request made pursuant to § 411(b).").

Should the Court ultimately conclude that the registrations at issue *are* invalid, it should not issue the overbroad and unsupported relief Daily Caller requests: an order that RWM cancel all of its registrations at issue *and* its other registrations that are not before this Court. *See* Mem. 37 ("Daily Caller further requests that the Court order Plaintiff to cancel *all of its copyright registrations that contain such inaccuracies (including but not limited to the Registrations directly at issue*) (emphasis added). The Daily Caller is asking for the Court to issue an impermissible advisory opinion regarding copyright registrations not before the Court and not currently in dispute. *See, e.g.*, *Nat'l Assn. of Home Builders v. Salazar*, 827 F. Supp. 2d 1, 7 (D.D.C. 2011) (Kessler, J.); *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 21–22 (D.D.C. 2017) (Cooper, J.). The Court should reject this overreach.

## VI.   CONCLUSION

For the many reasons set forth above, RWM respectfully requests that the Court deny Daily Caller's Motion to Refer Plaintiff's Registrations to the Register of Copyrights Pursuant to Section 411(b)(2) of the Copyright Act. Daily Caller has not and cannot establish (1) that the registrations at issue contained inaccuracies, and (2) that if they did contain inaccuracies, RWM submitted the applications with knowledge of the errors. Moreover, the broad relief Daily Caller requests is inappropriate.

//

//

//

//

22

DATED:  October 19, 2023,                    _____/s/ Kevin L. Vick_____

KEVIN L. VICK (admitted *pro hac vice*)
  kvick@jassyvick.com
JEAN-PAUL JASSY (admitted *pro hac vice*)
  jpjassy@jassyvick.com
JORDYN OSTROFF (admitted *pro hac vice*)
  jostroff@jassyvick.com
**JASSY VICK CAROLAN LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:     (310) 870-7048
Facsimile:     (310) 870-7010


*/s/ Danielle D. Giroux*
Danielle D. Giroux (D.C. Bar No. 470009)
Harman, Claytor, Corrigan & Wellman
1900 Duke Street, Suite 210
Alexandria, Virginia  22314
804-747-5200 - Phone
804-747-6085 - Fax
dgiroux@hccw.com

Attorneys for Plaintiff
REAL WORLD MEDIA, LLC