**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

REAL WORLD MEDIA LLC,

              Plaintiff,

v.

THE DAILY CALLER, INC.;
DOES 1-20,

              Defendants.

Case No. 1-23-cv-01654-JDB

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO REFER
PLAINTIFF'S REGISTRATIONS TO THE REGISTER OF COPYRIGHTS PURSUANT
TO SECTION 411(B)(2) OF THE COPYRIGHT ACT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 3

   I.   Daily Caller's Motion to Refer is Procedurally Appropriate and Not Prohibited by
      *Unicolors*.............................................................................................................. 3

  II.  Daily Caller has Satisfied the Statutory Requirements for Referral of Plaintiff's
      Registrations to the Register of Copyrights Under Section 411(b)(2)............................ 7

     A.   Plaintiff included inaccurate information in its copyright registration applications. ... 8

        1.   Each Registration included published works at the time of submission to the
            Copyright Office. .......................................................................................... 9

        2.   Each Work is a compilation even if it is also a derivative work............................ 13

     B.   Plaintiff included the inaccurate information in its copyright applications with
        knowledge that the information was inaccurate. ......................................................... 17

     C.   The alleged inaccuracies in Plaintiff's copyright registrations, if known to the
        Copyright Office, would have caused the Register of Copyrights to refuse
        registration. ................................................................................................................ 20

 III.   The Relief Daily Caller seeks in its Motion to Refer is Appropriate............................ 21

     A.   If the Registrations for the Works should not have been issued, the Registrations  fail
        to satisfy the prerequisite for a civil infringement claim under Section 411(a). ........ 21

     B.   The requested order instructing Plaintiff to follow the Copyright Office's  "Voluntary
        Cancellation" policy to cancel its Registrations is not improper............................... 22

CONCLUSION................................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABS Entertainment, Inc. v. CBS Corp.*,
    F.3d 405 (9th Cir. 2018) ........................................................................16

*Archie MD, Inc. v. Elsevier, Inc.*,
    261 F. Supp. 3d 512 (S.D.N.Y. 2017)...................................................18

*Atari Games Corp. v. Oman*,
    979 F.2d 242 (D.C. Cir. 1992) ..............................................................16

*Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C.*,
    40 F.4th 308 (5th Cir. 2022) ...............................................................6, 8

*Brunson v. Cook*,
    No. 3:20-CV-01056, 2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ........................ *passim*

*Burrow-Giles Lithographic Co. v. Sarony*,
    111 U.S. 53 (1884).................................................................................16

*Chambers v. Green-Stubbs*,
    No. 1:19-CV-093-GHD-DAS, 2021 WL 107252 (N.D. Miss. Jan. 12, 2021),
    *appeal dismissed*, No. 21-60108, 2021 WL 3609630 (5th Cir. July 7, 2021) .................22, 23

*DeliverMedHoldings, LLC v. Schaltenbrand*,
    734 F.3d 616 (7th Cir. 2013) ..................................................................7

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*,
    No. H-14-1903, 2017 WL 3206896 (S.D. Tex. July 26, 2017) .................................7

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..........................................................................14, 15

*FurnitureDealer.Net, Inc v. Amazon.com, Inc*,
    No. CV 18-232 (JRT/HB), 2022 WL 891473 (D. Minn. Mar. 25, 2022)...............................18

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,
    484 U.S. 49 (1987).................................................................................6

*Hardt v. Reliance Standard Life Ins. Co.*,
    560 U.S. 242 (2010)...............................................................................4

*Lieb v. Korangy Publ'g, Inc.*,
    No. CV 15-0040 (AYS), 2022 WL 1124850 (E.D.N.Y. Apr. 14, 2022), *appeal*
    *dismissed*, No. 22-1084, 2023 WL 3439481 (2d Cir. Mar. 2, 2023). .............................*Passim*

*Maljack Prods., Inc. v. UAV Corp.*,
  964 F. Supp. 1416 (C.D. Cal. 1997) ...................................................................................16

*Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*,
  No. CV 16-0084 FMO, 2017 WL 2404918 (C.D. Cal. Mar. 6, 2017) .....................................7

*Neman Bros. & Assoc., Inc. v. Interfocus, Inc. et al.*,
  No. 2:20-cv-11181-CAS-JPRx, 2023 WL 115558 (C.D. Cal. Jan. 4, 2023)................1, 17, 21

*Palmer/Kane LLC v. Rosen Book Works LLC*,
  188 F. Supp. 3d 347 (S.D.N.Y. 2016)...................................................................................7

*RepostHost v. Spectora Inc.*
  No. 22-cv-00457-DDD-SKC, 2023 WL 2782285 (D. Colo. Mar. 29, 2023)..........................19

*Ronaldo Designer Jewelry, Inc. v. Cox*,
  No. 1:17-CV-2-DMB-DAS, 2019 WL 1795935 (N.D. Miss. Apr. 24, 2019)..............5, 6, 7, 8

*Ronaldo Designer Jewelry, Inc. v. Cox*,
  No. 1:17-CV-2-DMB-DAS, 2019 WL 3978414 (N.D. Miss. Aug. 22, 2019) ..........................5

*Unicolors, Inc. v. H&M Hennes Mauritz, L.P.*,
  595 U.S. 178 (2022)................................................................................... *passim*

*Zalewski v. Cicero Builder Dev. Inc.*,
  754 F.3d 95 (2d Cir. 2014)..................................................................................13

## Statutes

17 U.S.C. § 101 ................................................................................................... *passim*

17 U.S.C. § 411 ................................................................................................... *passim*

## Other Authorities

37 C.F.R. § 202.4(c) ..........................................................................................2, 20, 23

Black's Law Dictionary (10th ed. 2014) ..................................................................................6

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
  (3D ED. 2021) § 609.3 ........................................................................................13

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
  (3D ED. 2021) § 1103.1 ........................................................................................18

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
  (3D ED. 2021) § 1807.4 ........................................................................................22

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
(3D ED. 2021) § 1905.1 ................................................................................................11, 12

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
(3D ED. 2021) § 1906.1 ................................................................................................12, 19

*Response of the Register of Copyrights* in *Bueno v. Behamou*,
Case No. 2:21-cv-04595-JVS (SPx) (C.D. Cal. June 30, 2022) ................................10, 11, 12

*Response of the Register of Copyrights* in *Olem Shoe Corp. v. Washington Shoe
Co.*,Case No. 1:09-cv-23494-CIV-HUCK/O'SULLIVAN (S.D. Fla. Oct. 14,
2010) (Dkt. 209).....................................................................................................................5

*Shira Perlmutter, Register of Copyrights, Ltr. to Sen. Thom Tillis on Publication
Study*, at 11 (Dec. 1, 2021)..................................................................................................19

Defendant, The Daily Caller, Inc. ("Defendant") by and through its undersigned counsel hereby respectfully submits this Reply Memorandum in Support of Defendant's Motion to Refer Plaintiff's Registrations to the Register of Copyrights Pursuant to Section 411(b)(2) of the Copyright Act ("Referral Reply") for issuance of a request to the Register of Copyrights to advise whether the Plaintiff Real World Media LLC's copyright Registrations[1] should have been refused.

## INTRODUCTION

To the extent the Court does not dismiss Plaintiff's copyright infringement claims for lack of actionable copying pursuant to Daily Caller's concurrently filed Motion to Dismiss, ECF Nos. 15 and 22, determining the validity of Plaintiff's Registrations for each of the Works will remain a threshold issue in this case.   A copyright infringement claim may not be instituted until a copyright registration has been made in accordance with the Copyright Act.   17 U.S.C. § 411(a). However, a copyright registration does *not* satisfy the requirements of Section 411(a) if the registration contains materially inaccurate information submitted knowingly or with willful blindness.   *See* 17 U.S.C. § 411(b)(1); *see also Neman Bros. & Assoc., Inc. v. Interfocus, Inc. et al.*, No. 2:20-cv-11181-CAS-JPRx, 2023 WL 115558, at *13 (C.D. Cal. Jan. 4, 2023) (dismissing copyright infringement claims after registrations were held "invalid as a matter of law" where the applicant was found willfully blind in submitting inaccuracies and referral to the Copyright Office under Section 411(b)(2) confirmed that the registrations should not have been issued).

---

[1] Capitalized terms used in this Referral Reply, but not otherwise defined, have the same meaning as provided in Daily Caller's Memorandum in Support of its Motion to Refer Plaintiff's Registrations to the Register of Copyrights Pursuant to Section 411(b)(2) of the Copyright Act, ECF No. 16-1 ("Referral Brief"); *see also* ECF No. 16 ("Motion to Refer").   The term "Registrations" as now used in this Referral Reply includes registration no. PAu004163238, which Plaintiff identified as the correct registration number for Work No. 13, *Man on Peyote Baptizes Himself, Hides Under Garbage Can Lid*.   *See* Plaintiff's Opposition to Defendant's Motion to Refer Plaintiff's Registrations to the Register of Copyrights Pursuant to Section 411(b)(2) of the Copyright Act, ECF No. 19 at 4, n.1 ("Referral Opp." or "Referral Opposition").

Referring Plaintiff's Registrations to the Register of Copyrights at this stage will not unduly delay this case as Plaintiff suggests.  Referral Opp. at 1.  Referral is the quickest and most efficient way to resolve a threshold issue in this case because (1) the material defects in the Registrations are apparent from Plaintiff's own allegations of publication and compilation authorship in the Complaint and (2) there is no dispute that published works and compilations are categorically ineligible for registration under the Group of Unpublished Works ("GRUW") application that Plaintiff used to obtain each Registration.  *See* 37 C.F.R. § 202.4(c)(1), (3); Declaration of Jay Horowitz ("Horowitz Decl."), ECF No. 19-1 ¶ 4.

Nothing in Plaintiff's Referral Opposition changes the plain text of Section 411(b)(2) of the Copyright Act, which requires this Court to refer the Registrations to the Register of Copyrights upon good faith allegations that the Plaintiff's GRUW copyright applications included publication and compilation information that was: (1) inaccurate; (2) provided with knowledge (willful blindness) of its inaccuracy; and (3) would have resulted in a refusal of the copyright applications.  17 U.S.C. § 411(b)(2).  The Supreme Court's decision in *Unicolors, Inc. v. H&M Hennes Mauritz, L.P.*, 595 U.S. 178 (2022), does not hold otherwise.  *Unicolors* did not address the standard under Section 411(b)(2) for referral to the Register of Copyrights—it addressed the meaning of "knowledge" under Section 411(b)(1)(A), which pertains to the ultimate invalidation of a copyright registration as opposed to the *initial step* of referring a potentially invalid registration to the Register of Copyrights.  *Id.* at 181-82.  Critically, however, *Unicolors* held that "willful blindness may support a finding of actual knowledge" for purposes of invalidating a registration and that "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law."  *Id.* at 187.  Accordingly, the only gamesmanship here is Plaintiff's misleading assertion that "*Unicolors* is clear that—even if RWM *had* made

mistakes regarding the publication status of its works and whether they are compilations or derivative works—those errors would not invalidate its registrations" because "the declaration of [RWM's] principal, Jay Horowitz, . . . conclusively establishes that RWM did not knowingly provide false information to the Copyright Office."  Referral Opp. at 3.

While Daily Caller acknowledges that certain cases may not provide sufficient factual allegations at the pleading stage to refer copyright registrations to the Register of Copyrights under Section 411(b)(2)—that is not the case here.  As detailed further below and in Daily Caller's Referral Brief, the Motion to Refer should be granted because it is procedurally proper, judicially efficient, and clearly satisfies the plain text of the referral requirements under Section 411(b)(2).

## ARGUMENT

I.  **Daily Caller's Motion to Refer is Procedurally Appropriate and Not Prohibited by** *Unicolors***.**

A copyright registration is not valid if it contains inaccurate information and "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).  The Copyright Act instructs that "[i]n *any case* in which inaccurate information described under paragraph [411(b)](1) is *alleged*, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(2) (emphasis added).  The plain text of Section 411(b)(2) requires the Court to grant Daily Caller's Motion to Refer so that the Register of Copyrights can "advise the court whether the inaccurate information [in Plaintiff's applications for the Registrations], if known, would have caused the Register of Copyrights to refuse registration."  *Id.*

The Supreme Court's decision in *Unicolors* does not hold otherwise.  *Unicolors* does not address Section 411(b)(2) or the appropriate procedural posture for such a referral to the Register of Copyright at all.  Rather, *Unicolors* addresses the meaning of "knowledge" under Section 411(b)(1)(A).  595 U.S. at 181-82.  While *Unicolors* held that "knowledge" or "willful blindness" of materially inaccurate information in an application for copyright registration is needed to invalidate a registration under Section 411(b)(1)—the plain text of Section 411(b)(2) merely requires a good faith *allegation* of such knowledge of material inaccuracies.  *Compare Unicolors*, 595 U.S. at 184-87; *with* Referral Opp. at 1-2 (conflating Section 411(b)(2) and Section 411(b)(1) requirements).  Notably, in reaching its holding with respect to Section 411(b)(1), the Supreme Court in *Unicolors* affirmed the importance of following "the text of the statute."  *Unicolors*, 595 U.S. at 184 (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)).  Here, the text of Section 411(b)(2) *requires* referral based on good faith *allegations*.  The factual allegations in the Complaint, coupled with the GRUW application requirements and statutory text of the Copyright Act as applied to the facts in this case, show that Plaintiff, via its principal, Jay Horowitz, submitted inaccurate compilation and publication information to the Copyright Office due to his willful blindness in adopting legal positions that egregiously misapplied clear requirements.  ECF No. 16-1 at 24-35; ECF No. 15-1 at 7-20.  Accordingly, referral to the Register of Copyrights is appropriate at this stage in this case.

Plaintiff cites no binding precedent to the contrary.  Notably, Plaintiff emphasizes that the "Register of Copyrights herself has endorsed" Plaintiff's preferred approach of waiting to refer copyright registrations to the Copyright Office until "after the parties have completed substantial discovery and, frequently, not until after trial of the parties' underlying claims and resolution of factual disputes regarding issues such as credibility."  Referral Opp. at 5, 7 (citing *Resp. of the*

4

*Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2)*, at 10, 12, *Olem Shoe Corp. v. Washington Shoe Co.,* Case No. 1:09-cv-23494-CIV-HUCK/O'SULLIVAN (S.D. Fla. Oct. 14, 2010) (Dkt. 209) [hereinafter *"Register's Olem* Response"]).  The Register's *Olem* Response, however, acknowledges that "17 U.S.C. § 411(b)(2) *requires* the court to seek the Register's advice when there is an *allegation* that an application contains inaccurate information[.]" Register's *Olem* Response at 11 (emphasis added).  The fact that the Register also opines that "if a court concludes that the *bare allegations are unsupported by any facts*, the court would be free to refrain from issuing requests to the Register" and that a "court retains the power to delay the request until a factual record has been developed, e.g., through affidavits or discovery[,]" does not permit this Court to refuse to refer Plaintiff's Registrations to the Register in this case where the Complaint contains factual allegations that support referral.  *Id.* (emphasis added).  Further, the Register's *Olem* Response cautions against waiting to refer if the "issue depends even in part on interpretation or understanding of the Copyright Office's registration practices;" in such cases, "the more prudent practice — and the practice anticipated in § 411(b) — would be to refer the question to the Register." *Id*. at 12, n.5.

As explained in Daily Caller's Referral Brief, the detailed analysis of the Section 411(b)(2) standard in *Ronaldo Designer Jewelry, Inc. v. Cox* is instructive and is the most faithful to the plain terms of the statute.  ECF No. 16-1 at 24-26 (citing *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2019 WL 1795935, at *2-4 (N.D. Miss. Apr. 24, 2019); *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2019 WL 3978414, at *1-2, *6 (N.D. Miss. Aug. 22, 2019)).  Plaintiff aims to cabin the analysis in *Ronaldo* by painting it as "an extreme outlier," Referral Opp. at 7-8, but *Ronaldo's* analysis follows bedrock rules of statutory interpretation, which were also applied in *Unicolors*.  *Compare Unicolors*, 595 U.S. at 184-85 (following text of statute and using Black's Law Dictionary to establish the plain meaning of "knowledge" in Section

411(b)(1)(A)), *with Ronaldo*, 2019 WL 1795935, at *2-3 (explaining that the Copyright Act "unambiguously provides that a referral to the Register is *required* '[i]n any case in which inaccurate information described under paragraph [411(b)](1) is *alleged*'" and that the "plain meaning of 'alleged,' of course, contemplates no evidentiary burden" given the definition in Black's Law Dictionary (10th ed. 2014) and the fact that "the United States Supreme Court has expressly rejected imposing an evidentiary burden when a statute, like § 411(b)(2), uses the phrase 'is alleged'") (citing 17 U.S.C. § 411(b)(2) and *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc*., 484 U.S. 49, 64-65 (1987)).

Also without merit is Plaintiff's further effort to discredit the analysis in *Ronaldo* by suggesting that it is no longer good law following the Fifth Circuit's decision in *Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C*., 40 F.4th 308, 315–16 (5th Cir. 2022).  Referral Opp. at 8.  The court in *Beatriz Ball* did not address *Ronaldo* and does not undermine *Ronaldo*'s analysis, which pertained to material inaccuracies in copyright applications.  The issue addressed by *Beatriz Ball* concerned an immaterial error in the name of the copyright owner listed in the registration, which was not raised until closing argument at trial.  *See Beatriz Ball*, 40 F.4th at 315–16 (preserving validity of copyright registration where "[n]onlawyer employees mistakenly listed the company's trade name—instead of its proper corporate designation, Beatriz Ball, LLC—on the copyright applications" and the parties did not "dispute, that 'Beatriz Ball, LLC' and 'Beatriz Ball Collection' are the same entity").

Contrary to the plain text of the statute, Plaintiff seeks to have this Court adopt the Seventh Circuit's two-step approach to referrals under Section 411(b)(2) stated below:

> courts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality. In other words, a litigant should demonstrate that (1) the registration application

> included inaccurate information; and (2) the registrant knowingly
> included the inaccuracy in his submission to the Copyright Office.
> Once these requirements are met, a court may question the Register
> as to whether the inaccuracy would have resulted in the application's
> refusal.

*DeliverMedHoldings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013); Referral Opp. at

5-8.  *Ronaldo* thoroughly examined the reasoning of *Schaltenbrand* and other cases citing it (upon

which Plaintiff relies) and concluded that "[w]hile [it] shares the Seventh Circuit's concern that

litigants may attempt to abuse § 411(b)(2), *Schaltenbrand*'s approach cannot be squared with the

plain language of the statute."  *Ronaldo*, 2019 WL 1795935, at *2 (applying the same to the

following cases that followed *Schaltenbrand*'s approach requiring more than good faith allegations

of material inaccuracies to refer registrations to the Copyright Office: *Palmer/Kane LLC v. Rosen

Book Works LLC*, 188 F. Supp. 3d 347, 349 (S.D.N.Y. 2016); *Energy Intelligence Grp., Inc. v.

Kayne Anderson Capital Advisors, LP*, No. H-14-1903, 2017 WL 3206896, at *3 (S.D. Tex. July

26, 2017); *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV 16-0084 FMO (AJWx), 2017

WL 2404918, at *4 (C.D. Cal. Mar. 6, 2017)).

While Daily Caller acknowledges that certain cases may not provide sufficient factual

allegations at the pleading stage to refer copyright registrations to the Register of Copyrights under

Section 411(b)(2)—that is not the case here.  *See* ECF No. 16-1 at 24-35 (detailing inaccuracies in

applications for the Works and Plaintiff's willful blindness); ECF No. 15-1 at 7-20.  As detailed

below, Daily Caller has demonstrated that referring the Registrations to the Register of Copyrights

under Section 411(b)(2) is appropriate in this case.

## II.   Daily Caller has Satisfied the Statutory Requirements for Referral of Plaintiff's Registrations to the Register of Copyrights Under Section 411(b)(2)

Plaintiff argues that even if Daily Caller's Motion to Refer is not premature, it should be

denied because Daily Caller has not satisfied "either prong of Section 411(b)(1), let alone both

prongs." Referral Opp. at 8-9; *id.* at 15-16.  This argument fails because the standard for referral to the Register is governed under the plain text of Section 411(b)(2) as explained above.[2]  Daily Caller has satisfied the elements of Section 411(b)(2) by setting forth good faith allegations that Plaintiff's GRUW copyright applications included publication and compilation information that was: (1) inaccurate; (2) provided with knowledge (willful blindness) of its inaccuracy; and (3) would have resulted in a refusal of the copyright applications. *See* 17 U.S.C. § 411(b)(2); *Ronaldo*, 2019 WL 1795935, at *4; ECF No. 16-1 at 26-35 (detailing each element relevant to referral under Section 411(b)(2)). Daily Caller briefly addresses below why Plaintiff's arguments in its Referral Opposition do not change that Daily Caller has satisfied the requirements of Section 411(b)(2).

   A.    Plaintiff included inaccurate information in its copyright registration applications.

   The allegations in the Complaint make clear that Plaintiff's applications included (at least) two types of inaccuracies, each constituting a false affirmation that the relevant Work met the strict eligibility requirements of the GRUW application, which categorically excludes published works and compilations.  ECF No. 16-1 at 26-30; *see also* Compl. ¶¶ 8, 12, 13, 34.

   Notably, there is no dispute that all of Plaintiff's Registrations were issued pursuant to its submission of the Works in GRUW applications.  *See* ECF No. 16-2 ¶ 2, Ex. A; ECF No. 16-3; ECF No. 19-1 ¶ 4.  There is also no dispute that the GRUW application expressly prohibits submission of any published works or compilations.  *See* Referral Opp. at 10, 15.

---

[2] Accordingly, Plaintiff's reliance on the Ninth Circuit's decision in *Unicolors* on remand for the proposition that "[b]efore making . . . a request [to the Register], a court must first establish whether the registrant had the proper 'knowledge' of the inaccuracy under § 411(b)(1)(A)," is not binding and does not comport with the plain text of the actual referral standard under Section 411(b)(2).  Referral Opp. at 15 (citing *Unicolors*, 52 F.4th at 1064).  Similarly, Plaintiff's citation to the Fifth Circuit's decision in *Beatriz Ball,* 40 F.4th at 316 n.5, is misleading and inapposite as the inaccuracy in the registration was not even raised until closing argument in that trial and only concerned an immaterial error.  *Id.*

The Complaint repeatedly alleges that each Work was initially "published" by Plaintiff on YouTube and each Work is comprised of "*selection, sequencing, editing, and arrangement* of different [third-party] videos and portions thereof."  Compl. ¶ 13 (emphasis added).  As detailed in Daily Caller's Referral Brief, and summarized below, these allegations show that 12 Works[3] were published prior to submission to the Copyright Office and that every Work is a textbook example of a "compilation" as defined under the plain terms of the Copyright Act. ECF No. 16-1 at 26-30 (including "YouTube Publication Date Chart").  Accordingly, each GRUW application for Registration of the Works included inaccurate publication and compilation status information.

1.    *Each Registration included published works at the time of submission to the Copyright Office.*

Plaintiff's Complaint repeatedly admits that it published the Works on its own YouTube channel.  *See* Compl. ¶ 34 (The "Works were all originally *published* on Real World Media's YouTube channels") (emphasis added); *see id.* ¶¶ 8, 12, 13.  Common sense and copyright law both treat the upload of the Works to YouTube as publication.  ECF No. 16-1 at 27-29.  Nothing in Plaintiff's Referral Opposition changes that.

There is no dispute that the Copyright Act defines "publication" as "the *distribution* of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending [as well as t]he offering to distribute copies or phonorecords to a group of persons for

---

[3] In its Referral Brief, Daily Caller identified 11 Works that were published prior to submission to the Copyright Office based on the date the Work was uploaded to YouTube as detailed in the YouTube Publication Date Chart.  ECF No. 16-1 at 26-30.  Now that Plaintiff has identified the copyright registration number for Work No. 13, *Man on Peyote Baptizes Himself, Hides Under Garbage Can Lid* (PAu004163238), it is clear that the uncontested upload date for Work 13, November 15, 2022, which is identified in the YouTube Publication Date Chart, ECF No. 16-1 at 23, predates the application date for the relevant registration (PAu004163238), which is December 22, 2022.  *See* Declaration of Rachel Fertig in support of Defendant The Daily Caller's Reply to Plaintiff's Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss at ¶ 12, Ex. J.

purposes of *further distribution, public performance, or public display*[.]"  17 U.S.C. § 101 (emphasis added); Referral Opp. at 13.  In its Referral Opposition, Plaintiff admits that some of the "Works were posted to YouTube prior to registration," and does not contest the upload dates of the Works listed in Daily Caller's "YouTube Publication Date Chart" in Section II of the Referral Brief.  *See* ECF No. 16-1 at 20-23; Referral Opp. at 13.  Plaintiff argues, however, that the Works were "not distributed to the public" by such upload to YouTube.  Referral Opp. at 13.  This contradicts Plaintiff's own argument that videos uploaded to YouTube are "distributed"—as that term is used in the Copyright Act:

> [T]he Complaint further alleges that Daily Caller "*distributed* the Works"—again, a defined term [in the Copyright Act]—"*by posting them on TheDC Shorts YouTube channel* and The Daily Caller's Facebook Page . . ."  Compl. ¶ 36.  This allegation clearly and unambiguously invokes 17 U.S.C. § 1202(b)(3) which provides that "No person shall . . . *distribute* . . . or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered.

ECF No. 18 at 33 (emphasis added).  Plaintiff cannot be permitted to apply its double standard to YouTube uploads.  If Plaintiff considers Daily Caller's upload of videos to YouTube to constitute a "distribution" – the same should (and does) apply to Plaintiff's uploads to YouTube.  Posting videos on YouTube does constitute publication. ECF No. 16-1 at 27-29; *Brunson v. Cook*, No. 3:20-CV-01056, 2023 WL 2668498, at *12-13 (M.D. Tenn. Mar. 28, 2023) (finding that works posted/uploaded to YouTube are published as defined in the Copyright Act).  Moreover, given that Plaintiff argues that Daily Caller's "posting" of videos to YouTube constitutes "distribution"—the Court should not credit Plaintiff's other self-serving argument that "[a]ll RWM meant by use of the term 'published' in the Complaint with reference to the Works is that, in the colloquial sense, RWM *posted* the Works on its YouTube channel 'Real World Police.'"  Referral Opp. at 14

(emphasis in original).   Under Plaintiff's own arguments, "posting" videos to YouTube is a "distribution" of the video and thus constitutes publication.

Finding that posting a video to YouTube constitutes a distribution to the public is entirely consistent with Plaintiff's own citation to the *Response of the Register of Copyrights* in *Bueno v. Behamou,* Case No. 2:21-cv-04595-JVS (SPx) (C.D. Cal. June 30, 2022) (Dkt. 74-1) (hereinafter, "Register's *Bueno* Response").   Referral Opp. at 14.   The Register's *Bueno* Response states that:

> [T]he COMPENDIUM (THIRD) explains, under the first sentence of this definition [of publication] (the "distribution" prong), "publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the *disclosure of the content of that work*."  [] For example, "[t]ransmitting a copy of an illustration to a client constitutes publication of that work, if the copyright owner authorized the client to use that image and did not impose any restrictions on the client's ability to *disclose that work to the public*.

Register's *Bueno* Response at 7 (citing U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES  (3D ED. 2021) ("COMPENDIUM (THIRD)") § 1905.1) (emphasis added).   It is common knowledge that YouTube allows users to "share" videos (i.e., disclose the contents of the video) with other members of the public.   In fact, as explained in the context of another Section 411(b)(2) referral in *Brunson*, works uploaded to YouTube are published under the terms of the Copyright Act because, when "made available on YouTube, . . . the work could then be shared by a theoretically infinite number of individuals to a variety of different web-based platforms."   2023 WL 2668498, at *12-13 (referring registration question to Register of Copyrights).   This upload of a copy of the work for thousands, if not millions, of YouTube users to "share" also satisfies the second prong of the "publication" definition.   17 U.S.C. § 101 (publication occurs by "offering to distribute copies or phonorecords to a group of persons for purposes of *further distribution, public performance, or public display*") (emphasis added); *see also* Register's *Bueno* Response at 8

("[P]ublication occurs [under the second prong] when copies of a [work] are offered to clients, including but not limited to newspapers, magazines, agencies, wire services, and websites with a license permitting further distribution *or display* of the [work].") (citing COMPENDIUM (THIRD) § 1906.1) (emphasis added).  Given that Plaintiff has alleged that its "YouTube channel 'Real World Police' publishes original investigative reporting . . .[and] has 1.45 million subscribers and features 890 videos, which have cumulatively attracted nearly 600 million views," it strains credulity for Plaintiff to argue that its Works were not "posted on YouTube for the purpose of other people further distributing them in any way."  Referral Opp. at 13.  In any event, the individuals on YouTube only need to share the Works for purposes of further "public display" in order to constitute publication under the second prong of the definition.  17 U.S.C. § 101.

Plaintiff also contends that the YouTube Terms of Service do not demonstrate that the Works were published via upload to YouTube.  Referral Opp. at 14.  *Brunson* holds otherwise. Specifically, after doing an exhaustive analysis of the meaning of publication and applying it in the context of a video upload to YouTube, *Brunson* held that "publication nonetheless occurs when a work is made available to YouTube, Instagram, and Twitter *due to the terms of use or services* to which a creator on these platforms *must agree* in order to post the work to the respective platforms."  *Brunson*, 2023 WL 2668498, at *13.  Again, for Plaintiff to have alleged in its Complaint that its YouTube channel "has 1.45 million subscribers" but now suggest that it has not "agreed to any of the specific versions of the YouTube Terms of Service" that allow the basic sharing functionality of YouTube strains credulity.  *See* Referral Opp. at 14; Compl. ¶ 12 (Plaintiff's "work is sustained through revenue generated from the views its videos receive").

The same is true of Plaintiff's spurious "limited publication" argument.  Referral Opp. at 14-15.  The Register's *Bueno* Response addresses the issue in passing in a footnote, Register's

*Bueno* Response at, 12-13 n.41, but the examples in the Compendium make clear that "limited publication" would not apply to commercially sharing videos with millions of viewers on YouTube.  *See* COMPENDIUM (THIRD) § 1905.1 (listing examples such as sending a manuscript to a prospective publisher and distributing a work to a limited group of people with a "Confidential" or "internal office use only" label).

Accordingly, consistent with Plaintiff's own admissions in the Complaint, the undisputed upload dates for the Works in the "YouTube Publication Date Chart," and Plaintiff's further admission that some of the "Works were posted to YouTube prior to registration," Referral Opp. at 13, there is no question that Daily Caller has satisfied its burden of alleging that Plaintiff included inaccurate publication information in each Registration when it falsely affirmed that each application for Registration contained only unpublished works.

2.    *Each Work is a compilation even if it is also a derivative work.*

Plaintiff argues that the Works are derivative works – not compilations.  Referral Opp. at 9 – 12.  This is a false choice.  A work can be both a derivative and a compilation.  Plaintiff cites no case or Copyright Office guidance that holds otherwise.  Rather, Plaintiff's own citation to *Zalewski v. Cicero Builder Dev. Inc.* recognizes that works may be both derivatives and compilations.  Referral Opp. at 17 (citing *Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 103 (2d Cir. 2014), for the proposition that "'[d]erivative' and 'compiled' may be useful concepts in some cases, but we reject the idea that works always fall neatly into one of these categories.").  The Copyright Office also expressly recognizes the fact that works can contain multiple forms of authorship.  *See generally* COMPENDIUM (THIRD) § 609.3 ("Works Containing Multiple Forms of Authorship").

As shown below, even if the Works are derivatives, they are still also compilations that are ineligible for the GRUW application used by Plaintiff to obtain each Registration.  Plaintiff's allegations of authorship in the Complaint map directly to the plain text of the definition of "compilation" under the Copyright Act. *Compare* 17 U.S.C. § 101 *with* Compl. ¶ 13.

| Complaint Authorship Allegation | Compilation Definition[4] |
|---|---|
| Real World Media produces the original creative works that are published on its YouTube channels. Its process involves identifying a newsworthy event and obtaining exclusive, never-before-seen footage and information associated with the event. This **material is typically obtained from sources such as local police departments and other public agencies**. Real World Media generally obtains its source material through public records requests to government entities. . . When Real World Media obtains records and information associated with a newsworthy event, it uses that material to create an original and unique audiovisual work that tells the story of the particular event. Real World Media's creative editorial process includes, among other things, the **selection, sequencing, editing, and arrangement of different videos and portions thereof**. Real World Media **selects specific portions of source videos and source audio to include and to exclude from the work it creates**. Real World Media's audiovisual works are frequently created from | A "compilation" is a work formed by the **collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged** in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works. |

---

[4] Plaintiff's attempt to narrow the scope of compilations by highlighting examples such as "periodicals, anthologies, encyclopedias, and other collective works," Referral Opp. at 10, is misleading as those examples come from the separate definition of "collective work." *See* 17 U.S.C. § 101 ("A 'collective work' is a work, such as a *periodical* issue, *anthology*, or *encyclopedia*, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole.") (emphasis added).  A collective work is a particular type of compilation that includes "independent works" as opposed to the broader definition of compilation, which covers selection and arrangement of "preexisting materials or . . . data" such as the names and phone numbers in the white pages in *Feist* or the preexisting public agency video clips at issue here.  *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 342-44 (1991).

hundreds of such selections, which Real World Media arranges to tell the story of the newsworthy event in its unique style. Real World Media decides the amount of time to display each video and audio clip, which camera angle to use at which time, and whether to crop the footage to focus on specific details, among many other creative editorial decisions. In so doing, Real World Media creates unique interrelationships between scenes. Real World Media adds its watermark to its works so viewers know they are watching an authentic, original Real World Media work. The end result is an original and unique audiovisual work containing, typically, hundreds of original creative artistic decisions.

In addition to mapping directly to the definition of a "compilation" under the Copyright Act, Plaintiff's allegations of authorship in the Complaint align with the Supreme Court's explanation of compilation authorship.  Specifically, *Feist* explained that the Copyright Act "identifies three distinct elements and requires each to be met for a work to qualify as a copyrightable *compilation*: (1) the collection and assembly of *pre-existing material*, facts, or data; (2) the *selection, coordination, or arrangement of those materials*; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an 'original' work of authorship." *Feist*, 499 U.S. at 357 (emphasis added).  Like the preexisting public domain facts and data selected and arranged in the white pages addressed in *Feist*, Plaintiff's Works are comprised of a "selection, sequencing, editing, and arrangement of different . . . [preexisting] source videos and source audio" that Plaintiff's Registrations identify as in the public domain.  Compl. ¶ 13; ECF No. 16-2 at ¶¶ 4(a)-(d), (g), (i), (j); ECF No. 16-5 at Exs. C-1, C-2, C-3, C-4, C-7, C-9, C-10.  Accordingly, to the extent the "selection, sequencing, editing, and arrangement" authorship in the Works merits protection, it is as a compilation.

By contrast, the Copyright Act's definition of "derivative work" does not even use the word selection and only refers to arrangement in the context of a "musical arrangement." *See* 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship, is a 'derivative work.'").  Despite the fact that the Complaint's allegations fall more squarely within the definition of "compilation," Plaintiff relies heavily on the non-binding decision in *Maljack Prods., Inc. v. UAV Corp.,* 964 F. Supp. 1416, 1426–27 (C.D. Cal. 1997), for its assertion that each Work is a derivative work – but not a compilation.  Referral Opp. at 10-12.  *Maljack*, however, does not hold that a work cannot be a compilation if it is a derivative.  Further, the Ninth Circuit in *ABS Entertainment, Inc. v. CBS Corp.*, recently limited the analysis from *Maljack*, opining that "[t]o the extent that *Maljack* held that the 'noticeable improvement [in (sound) quality] over the public domain version' could create copyright eligibility, we do not consider that aspect of *Maljack* persuasive."  908 F.3d 405, 422–23 (9th Cir. 2018).  Plaintiff's citation to *Atari Games Corp. v. Oman,* 979 F.2d 242, 246 (D.C. Cir. 1992), and *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884), for the proposition that the Works are exclusively derivatives, not compilations, is also inapposite.  Those cases simply do not involve the selection and arrangement of preexisting third-party materials as is the case with each of the Works.  Referral Opp. at 11 (stating that the Works "are 'arrangements' of pre-existing audiovisual footage").

Accordingly, regardless of whether each Work is a derivative, it is also a clear example of a compilation and thus ineligible for the GRUW application Plaintiff used to obtain each

Registration.  Plaintiff thus provided inaccurate authorship information in each Registration when it falsely affirmed that each GRUW application for Registration did not contain any compilations.

> B.   Plaintiff included the inaccurate information in its copyright applications with knowledge that the information was inaccurate.

As an initial matter, Plaintiff argues that "*Unicolors* is clear that—even if RWM *had* made mistakes regarding the publication status of its works and whether they are compilations or derivative works—those errors would not invalidate its registrations" because "the declaration of [RWM's] principal, Jay Horowitz, . . . conclusively establishes that RWM did not knowingly provide false information to the Copyright Office."  Referral Opp. at 3; *id.* at 16 (citing Declaration of Jay Horowitz).  This is wrong.

The Supreme Court confirmed in *Unicolors* that "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law" and that in addressing Section 411(b)(1), "willful blindness may support a finding of actual knowledge."  *Unicolors*, 595 U.S. at 187 (internal citations omitted).  Courts post-*Unicolors* have held that willful blindness is shown where an applicant has read the relevant copyright law standard and takes "a legal position that egregiously misapplie[s] clear requirements."  *Neman Bros.,* 2023 WL 115558, at *11 (citation omitted); *see also Lieb v. Korangy Publ'g, Inc.*, Case No. CV 15-0040 (AYS), 2022 WL 1124850, at *12-14 (finding willful blindness and referring registration question to Register after observing that *Unicolors* "cannot have meant that only copyright lawyers are in a position to be held accountable for inaccuracies regarding the law"); ECF No. 16-1 at 30-33.  That is the case here.

Plaintiff's principal, an investigative journalist, admits that he read the Copyright Act definitions of publication and compilation yet concluded that the Works were not compilations or published.  ECF No. 19-1, Horowitz Decl. ¶¶ 5-6.  Given the publication and authorship allegations

in Plaintiff's Complaint and how clearly the Works uploaded to YouTube qualify as published and compilations under the definitions in the Copyright Act, Daily Caller has at least shown a good faith basis for its allegation that the Plaintiff was willfully blind in submitting the GRUW applications covering each Work.  The reasons that such conclusions fall egregiously outside the clear application of the Copyright Act's definitions to the Works are detailed in Section II.A *supra* and Daily Caller's Referral Brief.  ECF No. 16-1 at 26-33.

Plaintiff's further citations to *Unicolors*, other cases with distinct questions regarding publication status,[5] and the Copyright Office's study regarding online publication are not to the contrary and not binding.  To start, *Unicolors* did not address online publication at all.  The Supreme Court decision in *Unicolors* addressed what constitutes "knowledge" under Section 411(b)(1).  595 U.S. at 185.  Accordingly, contrary to Plaintiff's assertion, the Supreme Court in *Unicolors* did not reach any *holdings* as to the "two errors Daily Caller accuses RWM of making." Referral Opp. at 16-17.  Further, the Ninth Circuit's decision in *Unicolors, Inc. v. H&M Hennese & Mauritz, L.P.* on remand applied the Supreme Court's decision in the context of a "unit of publication," which is restricted to *physical* publications.  52 F.4th at 1069; *see also* COMPENDIUM (THIRD) § 1103.1 ("A unit of publication is a package of separately fixed component works that

---

[5] *Archie MD, Inc. v. Elsevier, Inc.,* 261 F. Supp. 3d 512 (S.D.N.Y. 2017), does not address online publication on a third-party website, but does conclude, as of 2017, that licensing a work to a third-party for further use and distribution constitutes publication at the time of the license.  *Id.* at 517-18.  If anything, *Archie* supports *Brunson's* conclusion that "publication . . . occurs when a work is made available to YouTube . . . *due to the terms of use or services* to which a creator on these platforms *must agree* in order to post the work to the respective platforms."  2023 WL 2668498, at *12-13 (emphasis added).

Additionally, the works in *FurnitureDealer.Net, Inc v. Amazon.com, Inc*, were not posted to a social media site like YouTube that encourages sharing the content on the platform. No. CV 18-232 (JRT/HB), 2022 WL 891473 (D. Minn. Mar. 25, 2022).  Moreover, the court did not make a determination as to the publication status because the descriptions at issue were governed by conflicting statements as to whether users could print and download the materials.  *Id.* at *7-9.

are *physically bundled* together for distribution to the public as a single, integrated unit, and all of the works are first published in that integrated unit.") (emphasis added).

Additionally, unlike the Works at issue here, which Plaintiff admits to posting on his company's YouTube channel with over 1.45 million subscribers, Compl. ¶ 12, *RepostHost v. Spectora Inc.* addressed "boilerplate language" used in connection with report templates and software licensed to limited customers and not otherwise made available to the general public online or to anyone in the format submitted to the Copyright Office for registration. No. 22-cv-00457-DDD-SKC, 2023 WL 2782285, at *1-2 (D. Colo. Mar. 29, 2023).  In any event, *ReportHost* also acknowledged that a court "has the power to invalidate" a presumptively valid registration in deciding a motion to dismiss, including the assessment of willful blindness relevant to referral under Section 411(b)(2) at that stage.  *Id.* at *2.

Plaintiff also makes much of the Copyright Office's study regarding online publication. Referral Opp. at 18-20.  While the broader issue of when and how works are "published" by making them available online includes scenarios that are complex—the upload of videos to a third-party website for millions of members of the public to further share is not one of them. Accordingly, contrary to Plaintiff's framing of this study, there was no "definitive view" for the Copyright Office to take "regarding whether online dissemination constitutes 'publication'" because there are different scenarios that may or may not constitute publication.  *Compare* Referral Opp. at 19 *with* COMPENDIUM (THIRD) § 1906.1 (discussing various scenarios that may or may not constitute online publication); *see also Shira Perlmutter, Register of Copyrights, Ltr. to Sen. Thom Tillis on Publication Study*, at 11 (Dec. 1, 2021)[6] (recognizing "that evolving technology has made

---

[6] *Available at* https://www.copyright.gov/laws/hearings/Letter-on-Publication-Study-12-1-2021-FINAL.pdf (last accessed on Nov. 20, 2023).

it possible for creators to make their works accessible to the public in many different ways").  For

this reason, Plaintiff fails to distinguish *Brunson*'s thorough analysis of how online publication

applies to *works posted to YouTube*.  *See* Referral Opp. at 20.  Unlike the cases Plaintiff seeks to

rely on, *Brunson* directly addresses whether works uploaded to YouTube are considered published

for purposes of copyright law.  2023 WL 2668498, at *12-13.  And, as explained in Section II.A.

above, *Brunson* concludes that uploading works to YouTube constitutes publication for multiple

reasons and ultimately referred the registration in that case to the Register of Copyrights pursuant

to Section 411(b)(2).  *Id.* (referring a registration obtained based on an application submitted May

12, 2020, which predates all but one of the Works in this case).

Accordingly, nothing in Plaintiff's Referral Opposition changes that Daily Caller has at

least shown a good faith basis for its allegation that the Plaintiff was willfully blind in submitting

the GRUW applications covering each Work.

C.      <u>The alleged inaccuracies in Plaintiff's copyright registrations, if known to the
        Copyright Office, would have caused the Register of Copyrights to refuse
        registration.</u>

Plaintiff concedes that the GRUW application categorically prohibits submission of

published works and compilations.  *See* Referral Opp. at 10 ("compilations cannot be registered

via the GRUW application"); *id.* at 15 (the relevant "question is whether RWM's principal knew

that the Works at issue *were* compilations or published works").  Accordingly, there is no question

that Daily Caller has satisfied its burden to allege in good faith that the inaccurate publication and

compilation information about the Works, if known, would have caused the Register to refuse

registration of the Works.  *See* ECF No. 16-1 at 33-35 (citing 37 C.F.R. § 202.4(c)(1), (3) ("[A]

group of unpublished works may be registered in Class TX, PA, VA, or SR with one application,

the required deposit, and the filing fee . . ., if the following conditions are met: . . . (1) All the

works in the group *must be unpublished* . . . (3) The group . . . *may not include compilations*, collective works, databases, or websites.") (emphasis added)); *see also Brunson*, 2023 WL 2668498, at *18-19 ("[M]isrepresenting a work as unpublished when it was in fact published is a 'fundamental registration error' that courts have recognized as a basis to warrant invalidating a copyright registration.") (collecting cases).

**III.    The Relief Daily Caller seeks in its Motion to Refer is Appropriate.**

> A.    <u>If the Registrations for the Works should not have been issued, the Registrations fail to satisfy the prerequisite for a civil infringement claim under Section 411(a).</u>

As detailed in Daily Caller's concurrent Motion to Dismiss, to bring a claim for copyright infringement, a plaintiff must possess a valid copyright registration for the work at issue. 17 U.S.C. § 411(a); *Unicolors*, 595 U.S. at 181 ("A valid copyright registration provides a copyright holder with important and sometimes necessary legal advantages. It is, for example, a prerequisite for bringing a 'civil action for infringement' of the copyrighted work.") (citing 17 U.S.C. § 411(a)); (*see also* Memorandum in Support of Defendant's Motion to Dismiss, ECF No. 15-1 at Section II.A). Thus, absent a valid registration for the Works, Plaintiff cannot assert its infringement claims and such claims must be dismissed. *See, e.g., Neman Bros.*, 2023 WL 115558, at *13 (holding that plaintiff's copyright registrations did "not fall into Section 411(b)'s safe-harbor provision, because [plaintiff] submitted inaccurate information on the applications with knowledge it was inaccurate and that the inaccuracy of that information, if known, would have caused the Register of Copyrights to refuse registration" and "[a]ccordingly, pursuant to 17 U.S.C. § 411, [plaintiff] cannot bring infringement claims for the Subject Designs" because the registrations "are invalid as a matter of law"). In the event the Register of Copyrights advises that the Registrations should have been refused, Daily Caller respectfully requests that the Court dismiss Plaintiff's copyright infringement claims with respect to Works subject to such Registrations. *See* Reply

Memorandum in Support of Defendant's Motion to Dismiss, ECF No. 22 at Section II.A; ECF No. 15.

      **B.**    <u>The requested order instructing Plaintiff to follow the Copyright Office's</u> <u>"Voluntary Cancellation" policy to cancel its Registrations is not improper.</u>

The cancellation relief requested in Daily Caller's Referral Brief is appropriate and distinct from the court finding that the Registrations are invalid for purposes of stating a claim for copyright infringement under Section 411(a).   ECF No. 16-1 at 37.   That said, now that Plaintiff's Opposition, ECF No. 18, has identified the correct registration number for Work No. 13, *Man on Peyote Baptizes Himself, Hides Under Garbage Can Lid* (PAu004163238) and the allegedly infringing clips at issue in this case, Daily Caller revises its cancellation order request as set forth below.

If the Register of Copyrights advises that Plaintiff's Registrations should not have been issued where it submitted audiovisual works that were either (1) compilations of preexisting public agency footage and/or (2) published on YouTube prior to the date the application was submitted, Daily Caller asks that the Court issue an order instructing Plaintiff to cancel all of its Registrations containing such inaccuracies.   This relief is in accordance with the Copyright Office's instructions for litigants to "ask the court to issue the order to the copyright claimant named in the certificate of registration or the claimant's duly authorized agent . . . [and] to direct that party to cancel the registration using the procedure described in Section 1807.4(E)."   COMPENDIUM (THIRD)§ 1807.4(F); *see also id.* § 1807.4(E) (describing process for a copyright claimant to submit a "Voluntary Cancellation" request, including "because the work was registered in the *wrong class*") (emphasis added); *see also Chambers v. Green-Stubbs*, No. 1:19-CV-093-GHD-DAS, 2021 WL 107252, at *5 (N.D. Miss. Jan. 12, 2021), *appeal dismissed*, No. 21-60108, 2021 WL 3609630 (5th Cir. July 7, 2021) (A court "can issue an order directing a party in a copyright infringement

lawsuit to request from the Copyright Office that the Office cancel the party's own copyright registration through the voluntary cancellation procedure dictated by the Copyright Office.").

Further, as noted in *Chambers*, the Copyright Office, after being made aware of the issues in this case, can begin its own process of cancelling the Plaintiff's other copyright registrations that may be subject to the same categorical defects. *See Chambers*, 2021 WL 107252, at *8 (citing 37 C.F.R. § 201.7(c)). There is no dispute that published works and compilations are categorically ineligible for registration under the GRUW application. *See* 37 C.F.R. § 202.4(c)(1), (3). Accordingly, Daily Caller leaves it to the discretion of the Copyright Office to address Plaintiff's other registrations that are not at issue in this case but appear likely to include the same defects given the statements in Jay Horowitz's declaration, ECF No. 19-1; *see also* Referral Opp. at 1 (same).[7]

## CONCLUSION

For the foregoing reasons, Daily Caller respectfully requests that the Court grant its Motion to Refer.


Dated: November 20, 2023

Respectfully submitted,

*/s/ J. Kevin Fee*

**DLA PIPER LLP (US)**
J. Kevin Fee (D.C. Bar No. 494016)
Rachel Fertig (D.C. Bar No. 1552360)
500 Eighth St. N.W.
Washington, DC 20004

---

[7] Notably, although Plaintiff makes much of the fact that the Copyright Office has registered his works pursuant to GRUW applications for years, this only underscores its abuse of the registration system. Referral Opp. at 1. The Copyright Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records" and "[o]rdinarily . . . does not conduct investigations or make findings of fact to confirm the truth of any statement made in an application, such as whether a work has been published or not." COMPENDIUM (THIRD) § 602.4(C).

23

Phone: (202) 799-4149
kevin.fee@us.dlapiper.com
rachel.fertig@us.dlapiper.com

Attorneys for Defendant
The Daily Caller, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2023, the foregoing REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO REFER PLAINTIFF'S REGISTRATIONS TO THE REGISTER OF COPYRIGHTS PURSUANT TO SECTION 411(B)(2) OF THE COPYRIGHT ACT was filed with the clerk of this Court via the CM/ECF system, which will notify all counsel of record.


Dated: November 20, 2023                    /s/ *J. Kevin Fee*
                                            J. Kevin Fee