**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

REAL WORLD MEDIA LLC,

     Plaintiff,

     v.

THE DAILY CALLER, INC.; DOES 1–20,

     Defendants.

Civil Action No. 23-1654 (JDB)

**MEMORANDUM OPINION**

In this copyright action, plaintiff Real World Media LLC ("RWM") alleges that The Daily Caller, Inc. and its employees ("Daily Caller") copied portions of at least fourteen of RWM's YouTube news videos and posted them on its own channels.  RWM asserts claims for copyright infringement, 17 U.S.C. § 101 et seq., and for violations of the Digital Millenium Copyright Act ("DMCA"), id. § 1201 et seq.  Before the Court are Daily Caller's motion to dismiss and motion to refer RWM's copyright registrations to the Register of Copyrights.  For the reasons that follow, the Court will deny both motions.

**Background**

**I.   Factual Background**

The following information is drawn from the allegations in RWM's complaint, documents attached to the complaint or incorporated therein by reference, and matters of which the Court may take judicial notice.  Hurd v. D.C., Gov't, 864 F.3d 671, 678 (D.C. Cir. 2017).  The Court addresses those materials that are appropriately considered in greater detail below.

RWM is an investigative journalism organization that produces and publishes news videos related to law enforcement, crime, and transportation safety.  Compl. [ECF No. 1] ¶ 8.  It identifies newsworthy events such as arrests and police chases and then obtains public-record videos (often

1

body-camera or dash-camera footage) of these events from police departments and other public agencies.  Id. ¶ 13; id. App. A.; see Notice of Lodging of Ex. 1 to Compl. [ECF No. 2] ("RWM Ex. 1").  To obtain the videos, RWM uses public records requests, pays access fees, and—when necessary—utilizes litigation.  Compl. ¶ 13.  RWM then stitches the videos together to tell the story of the event.  See id.  Its "creative editorial process includes, among other things, the selection, sequencing, editing, and arrangement of different videos and portions thereof"—for example, "the amount of time to display each video and audio clip, which camera angle to use at which time, and whether to crop the footage to focus on specific details."  Id.  RWM's news videos are "frequently created from hundreds of such selections."  Id.  RWM also includes a title sequence and preview at the beginning of its videos.  See, e.g., RWM Ex. 1.  RWM generally registers copyrights for its videos.  See Compl. ¶¶ 14, 19.

RWM posts its news videos to two RWM YouTube channels that collectively have around 1,230 videos, 1.65 million subscribers, and 700 million video views.  Id. ¶ 12.  RWM's work is sustained by revenue generated based on the number of views its videos receive.  Id. ¶ 8.

Daily Caller is a for-profit Washington, D.C.-based media company founded by Tucker Carlson and Neil Patel.  Id. ¶¶ 2, 9.  It has a YouTube channel with around 7,200 videos and 380 million views.  Id. ¶ 15.  Daily Caller also posts videos on its Facebook Page.  Id.  Like RWM, Daily Caller earns revenue from these video postings.  Id. ¶ 16.

Daily Caller allegedly copied portions of at least fourteen of RWM's copyrighted videos without authorization and posted them on its YouTube channel and Facebook Page.  Id. ¶¶ 14, 19, 26.  For example, Daily Caller copied seventeen minutes of RWM's twenty-six-minute video "Florida Woman Arrested for Wrong Way Drunk Driving" and posted the copy on YouTube and Facebook.  Id. ¶ 18; see RWM Ex. 1.  Other copied videos include features such as "155 MPH in

a 65 | Nevada's Fastest Speeding Ticket of 2019" and "Man on Peyote Baptizes Himself, Hides Under Garbage Can Lid."  Compl. App. A.  Each of the original RWM videos included a RWM title sequence, and most (or perhaps all) also included a RWM watermark.  Compl. ¶ 21.  In the copies, Daily Caller removed RWM's title sequence, removed the RWM watermark (in some instances), and removed the original video title and other information.  Id. ¶¶ 21, 34–35.  Many of Daily Caller's copies have received millions of views.  Id. ¶ 4.

RWM discovered the copies in April 2023 and sent takedown notices to YouTube.  Id. ¶ 21.  In response, Daily Caller sent counter notices requesting that YouTube reinstate the allegedly infringing material.  Id.  Daily Caller did not remove the copies posted to its Facebook Page.  Id.

## II.    Procedural History

RWM filed the present action against Daily Caller in June 2023.  Id. at 13.  Its complaint asserts two counts: (1) copyright infringement and (2) violations of the Digital Millenium Copyright Act.  Id. ¶¶ 23–43.  RWM seeks damages, attorney's fees, and injunctive relief.  Id. at 12–13.  Attached to the complaint is a side-by-side comparison of RWM's "Florida Woman Arrested for Wrong Way Drunk Driving" video—one of the fourteen videos identified in the complaint—and Daily Caller's allegedly infringing video.  See RWM Ex. 1.  RWM believes that Daily Caller has copied other of RWM's copyrighted works beyond the fourteen identified and seeks to identify such works through discovery.  Compl. ¶ 19.

Daily Caller moved to dismiss RWM's complaint and concurrently moved to refer RWM's copyrights to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2).  See Def.'s Mot. to Dismiss Pl.'s Compl. [ECF No. 15]; Mem. in Supp. of Def.'s Mot. to Dismiss Compl. [ECF No. 15-1] ("MTD"); Def.'s Mot. to Refer Pl.'s Registrations to Register of Copyrights [ECF No. 16]; Mem. in Supp. of Def.'s Mot. to Refer Pl.'s Registrations to Register of Copyrights [ECF No. 16-

1] ("MTR").  Daily Caller attached extensive extra-record materials to both motions: over 330 pages of exhibits to its motion to dismiss, accompanied by a request for judicial notice, and over 1,280 pages of exhibits to its motion to refer.  See Exs. A–E to MTD [ECF No. 15-3 to 15-7]; Exs. A–N to MTR [ECF No. 16-3 to 16-16].  RWM opposed both motions, see Pl.'s Opp'n to MTD [ECF No. 18] ("MTD Opp'n"); Pl.'s Opp'n to MTR [ECF No. 19] ("MTR Opp'n"), and Daily Caller filed replies, see Reply Mem. in Supp. of Def.'s MTD [ECF No. 22] ("MTD Reply"); Reply Mem. in Supp. of Def.'s MTR [ECF No. 23] ("MTR Reply").  Along with its replies, Daily Caller submitted copies of all fourteen RWM videos and allegedly infringing Daily Caller videos at issue. See Exs. 1–15 & A–J to MTD Reply [ECF No. 22-1 to 22-27] ("Video Exs.").  RWM filed a response objecting to the inclusion of this new material for the first time at the reply stage.  See Pl.'s Evidentiary Objs. to Def.'s Evid. Submitted for First Time with Reply [ECF No. 24] ("Video Objs.").  Several months later, RWM filed a notice of supplemental authority, see Notice of Suppl. Auth. [ECF No. 26], Daily Caller filed a response along with its own notice of supplemental authority, see Resp. to Pl.'s Notice of Suppl. Auth & Def.'s Notice of Suppl. Auth. [ECF No. 27] ("Def.'s Suppl. Auth."), and RWM filed a response to Daily Caller's supplemental authority, see Pl.'s Resp. to Def.'s Suppl. Auth. [ECF No. 29].

Both motions are now fully briefed and ripe for resolution.  While Daily Caller requests an oral hearing, the Court concludes that the written briefing is sufficient to resolve the present motions.  See LCvR 7(f) (committing this decision to "the discretion of the Court").

## Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In deciding

such a motion, courts must generally "accept the [complaint's] factual allegations as true and draw all reasonable inferences in the plaintiff's favor." <u>Sanchez v. Off. of State Superintendent of Educ.</u>, 45 F.4th 388, 395 (D.C. Cir. 2022).  Courts should not, however, accept "legal conclusions" or "legal contentions couched as factual allegations" in the complaint, <u>Gulf Coast Mar. Supply, Inc. v. United States</u>, 867 F.3d 123, 128 (D.C. Cir. 2017), nor must they "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice," <u>Scahill v. District of Columbia</u>, 909 F.3d 1177, 1186 (D.C. Cir. 2018) (internal quotation marks omitted).

The standard for granting a motion to refer to the Register of Copyrights is contested by the parties and will be addressed at length below.  <u>See</u> <u>infra</u> Analysis Section II.

<u>**Analysis**</u>

**I.    Motion to Dismiss**

**A.  12(b)(6) Record**

The threshold question is what materials the Court may appropriately consider.  At the motion-to-dismiss stage, the focus is on the complaint's allegations.  <u>Hurd</u>, 864 F.3d at 678.  But a court may also consider "matters of which the court may take judicial notice" and "documents either attached to or incorporated in the complaint" without converting the motion to one for summary judgment.  <u>Id.</u> (cleaned up); <u>see</u> Fed. R. Civ. P. 12(d).  Judicial notice permits a court to notice an adjudicative fact "not subject to reasonable dispute"—that is, a fact that is either "generally known" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The incorporation-by-reference doctrine, an outgrowth of Federal Rule of Civil Procedure 10(c), permits courts to consider documents not

attached to a complaint if they are "referred to in the complaint and integral to the plaintiff's claim." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (cleaned up).

Here, Daily Caller asks the Court to take judicial notice of (or to treat as incorporated) five sets of documents totaling over 330 pages: (1) RWM's copyright applications associated with the fourteen works at issue, (2) RWM's correspondence with the Copyright Office in connection with these applications, (3) the copyright registration record of each of the works, (4) printouts of the YouTube page for each of the works, and (5) printouts of the Copyright Office's online registration application utilized by RWM. See Req. for Jud. Notice in Supp. of Def.'s MTD [ECF No. 15-8] ("Jud. Notice Req.") at 1–2; MTD Reply at 6–7. RWM responds that this is a procedurally improper attempt to litigate the validity of RWM's copyright registrations on a motion to dismiss rather than taking as true the complaint's allegations and the fact that RWM's registrations "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." MTD Opp'n at 7 (quoting 17 U.S.C. § 410(c)); see id. at 7–9. But RWM does not specifically address whether each of the categories of documents identified by Daily Caller is properly considered at this stage. See id. at 7–9.

The Court exercises caution when confronted with such heavy reliance by a defendant on extra-complaint materials. "The overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). "Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint"; absent courts' careful analysis of which documents—and which facts within those documents—are properly considered, this tactic can lead to "premature dismissals of plausible claims." Id.; see also, e.g., Crudup v. District of Columbia, Civ. A. No. 20-1135 (TSC), 2023 WL

2682113, at *6 (D.D.C. Mar. 29, 2023) (declining to consider proffered exhibits).  Further, "[w]hen parties pile on volumes of exhibits to their motion to dismiss . . . their submissions can become needlessly unwieldy."  Khoja, 899 F.3d at 1005.

Notwithstanding these concerns, the Court will consider Daily Caller's proffered materials for three case-specific reasons.  First, courts have (to varying degrees) treated each category of materials offered by Daily Caller as susceptible to judicial notice.  See Jud. Notice Req. at 2–4 (collecting cases).  Second, while RWM broadly objects to Daily Caller's reliance on these materials, it does not develop any argument as to why each specific category is either not susceptible to judicial notice or not properly considered under the incorporation-by-reference doctrine.  Third, and most importantly, RWM's complaint survives Daily Caller's motion to dismiss whether or not these materials are considered.

The Court will also consider the videos submitted in connection with Daily Caller's reply brief under the incorporation-by-reference doctrine.  These materials are referenced in the complaint and are integral to RWM's claim.  See Compl. ¶ 19; id. App. A; Banneker Ventures, 798 F.3d at 1133.  RWM objects that these videos should have been submitted earlier, noting that arguments debuted in reply briefs are generally forfeited.  See Video Objs. at 1–2.  But the Court's reliance on these videos does not implicate the concerns underpinning RWM's objection.  While the Court will look to these videos to inform its broad judgment on the motion to dismiss, it declines to make video-specific determinations given the absence of briefing on this point.  Daily Caller chose to couch its legal challenges at a high level of generality; the parties' briefing thus focused on general principles rather than those principles' application to each video.  If the parties believe that there are video-specific distinctions to be made, they are free to develop those arguments at summary judgment.

With the motion-to-dismiss record established, the Court now turns to the substance of the parties' disagreements.

## B. Copyright Infringement Claims

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression," including "audiovisual works."  17 U.S.C. § 102(a).  The owner of a valid copyright has the exclusive right to, inter alia, reproduce, distribute, or display the copyrighted work.  Id. § 106.  "To prove infringement, a plaintiff must show (1) its ownership of a valid copyright and (2) the defendant's copying of original elements of the work."  Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc., 82 F.4th 1262, 1267 (D.C. Cir. 2023) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

Daily Caller advances four arguments as to why RWM has not plausibly alleged infringement.  Daily Caller contends that RWM's copyrights at issue are not "valid" because of inaccuracies in its applications and because the works do not contain copyrightable authorship. See MTD at 2, 17–19.  Daily Caller further contends that RWM has not plausibly alleged either that Daily Caller actually copied RWM's works or that Daily Caller copied protected aspects of RWM's works.  Id. at 2.  The Court will consider each argument in turn.

### i.   Ownership of Valid Copyright

#### a.   Validity of Registrations

Daily Caller's first argument is that RWM's copyrights are invalid due to inaccuracies in its applications.  A valid copyright registered "in accordance with" the Copyright Act is generally a prerequisite to bringing a "civil action for infringement."  17 U.S.C. § 411(a).  To obtain such a registration, an applicant must submit a copy of their work and an application to the Register of

Copyrights.  Id. §§ 408, 409.[1]  The application must provide information on the applicant and the work.  Id. § 409.  Some of this information is strictly factual, but aspects of the application also call for legal conclusions.  Id.; see also 37 C.F.R. §§ 202.3, 202.4.  If the Register determines that the work is copyrightable and that other requirements have been met, she "shall register the claim and issue to the applicant a certificate of registration."  17 U.S.C. § 410(a).  This certificate "contain[s] the information given in the application" along with the number and effective date of the registration.  Id.  A certificate of registration generally "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate," creating a rebuttable presumption of ownership of a valid copyright.  17 U.S.C. § 410(c); see Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc., 597 F. Supp. 3d 213, 230 (D.D.C. 2022), aff'd, 82 F.4th 1262 (D.C. Cir. 2023).[2]

Errors in an application do not necessarily render a resulting registration invalid.  The Copyright Act includes a safe-harbor provision, which provides in relevant part that:

(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court

---

[1] The Register of Copyrights is the "director of the Copyright Office" and she and her subordinate officers are responsible for "[a]ll administrative functions and duties under [the Copyright Act]."  17 U.S.C. § 701(a).

[2] This presumption is mandatory for registrations "made before or within five years after first publication of the work," 17 U.S.C. § 410(c), including the registrations at issue in this case, see Ex. A to MTD [ECF No. 15-3]; Ex. D. to MTD [ECF No. 15-6].  "The evidentiary weight to be accorded [to registrations made after that five-year period] shall be within the discretion of the court."  17 U.S.C. § 410(c).

whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

Id. § 411(b) (emphasis added).

For present purposes, the Court's focus is on the first section of the provision—specifically, the knowledge requirement.  The Supreme Court recently interpreted this requirement to mean "actual, subjective awareness of both the facts and the law."  Unicolors, Inc. v. H&M Hennes & Mauritz, L. P., 142 S. Ct. 941, 947 (2022).  The Unicolors Court reasoned that, because registration applications "call for information that requires both legal and factual knowledge," inaccurate information is "equally (or more) likely to arise from a mistake of law as a mistake of fact."  Id. That is particularly so "because applicants include novelists, poets, painters, designers, and others without legal training"—and "[n]othing in the statutory language suggests that Congress wanted to forgive those applicants' factual but not their (often esoteric) legal mistakes."  Id.  But a copyright holder's self-serving denial of knowledge is not necessarily a free pass: "willful blindness may support a finding of actual knowledge," as may "[c]ircumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters."  Id. at 948.

Here, Daily Caller contends that RWM provided two forms of inaccurate information on its copyright registration applications.  Daily Caller asserts, and RWM does not dispute, that RWM submitted its works using "Group of Unpublished Works" applications.  See MTD at 10; MTD Opp'n at 12; see also Ex. A to MTD [ECF No. 15-3].  Works may be submitted via this method subject to various requirements, including that "[a]ll the works in the group must be unpublished" and that "[t]he group may include individual works, joint works, or derivative works, but may not include compilations, collective works, databases, or websites."  37 C.F.R. § 202.4(c)(1), (3). Daily Caller asserts that RWM violated both requirements, relying heavily on the materials

attached to its motion to dismiss to attempt to rebut § 410(c)'s presumption of validity.  Daily Caller argues that RWM's works were not "unpublished" at the time of submission because RWM had previously posted the videos to YouTube, and that the works are "compilations" of the underlying public-record videos.  See, e.g., MTD at 10–17; MTR Reply at 9–17.  RWM responds that its applications were not inaccurate because the question of when online works are published is "notoriously complex" and because RWM's videos are more like derivative works than compilations of discrete items.  See MTD Opp'n at 12–21.

The Court need not resolve these questions at this stage.  Even assuming that RWM's applications were indeed inaccurate, Daily Caller has not shown that RWM submitted the applications with actual knowledge of these inaccuracies.  See 17 U.S.C. § 411(b)(1)(A); Unicolors, 142 S. Ct. at 945.  Daily Caller seeks to establish RWM's actual knowledge through circumstantial evidence in the form of copyright application guidance and reference materials.  See MTD Reply at 10; MTR at 30–33.  The Court rejects that argument.  For one thing, the legal questions are not so clear as Daily Caller makes out.  See Unicolors, 142 S. Ct. at 948 (identifying the significance of the error and the complexity of the rule as relevant circumstantial evidence).  Further, Daily Caller's materials bearing on the circumstantial evidence inquiry are drawn from the extra-complaint record Daily Caller itself crafted.  Cf. Khoja, 899 F.3d at 1003 (noting the "perverse" risk that a defendant can "topple otherwise cognizable claims" by crafting a "new version of the facts" through extra-complaint materials—one to which "the plaintiff receives no opportunity to respond").  There has been no meaningful factual development or inquiry into RWM's principal's state of mind.[3]  And, of course, the Court is compelled to "draw all reasonable inferences in [RWM's] favor" at this stage.  Sanchez, 45 F.4th at 395.

---

[3] Along with its opposition brief, RWM submitted a declaration from its principal addressing his understanding of the registration requirements and lack of knowledge of any inaccuracies at the time of submission.

Daily Caller's own cases underscore the exceptional nature of its request.  Daily Caller principally relies on two post-Unicolors cases that found willful blindness based in large part on Copyright Office guidance materials.  See MTD Reply at 10; MTR at 31–33.  But Daily Caller neglects to mention that both cases were decided at summary judgment rather than on a motion to dismiss and considered materials such as declarations and deposition testimony.  See Neman Bros. & Assoc. v. Interfocus, Inc., Civ. A. No. 220-11181 (CAS/JPRX), 2023 WL 115558, at *1–2, *4–6, *11 (C.D. Cal. Jan. 4, 2023); Lieb v. Korangy Publ'g, Inc., Civ. A. No. 15-0040 (AYS), 2022 WL 1124850, at *1, *3 (E.D.N.Y. Apr. 14, 2022).

Because Daily Caller has not shown RWM's actual knowledge of any inaccuracy in its applications, the Court rejects Daily Caller's argument for dismissal based on the technical validity of RWM's registrations.

### b.  Copyrightable Authorship

Daily Caller's second argument is that, any technical deficiencies aside, RWM's copyrights are invalid because the underlying works do not contain copyrightable authorship.  No one disputes that RWM lacks an exclusive right to the underlying public-record videos it utilizes to make its news videos.  See MTD at 18; MTD Opp'n 21–25.  And RWM's efforts to locate and obtain these videos—its "sweat of the brow"—does not confer copyright protection either.  Feist, 499 U.S. at 359–60.  The question, then, is whether RWM's efforts to weave these videos together through selection, editing, sequencing, and the like are sufficient to confer copyright protection.  The Court concludes that, at this point, Daily Caller has not rebutted the presumption of validity regarding RWM's copyrights.  See 17 U.S.C. § 410(c).

---

See Decl. of Jay Horowitz in Supp. of MTD Opp'n [ECF No. 18-1].  The Court declines to consider this declaration at the motion-to-dismiss stage.  See Fed. R. Civ. P. 12(d).

"The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103(b).  To be eligible for copyright, the contributed material must be "original to the author"—that is, it must be "independently created by the author" and it must "possess[] at least some minimal degree of creativity."  Feist, 499 U.S. at 345.  "[T]he requisite level of creativity is extremely low; even a slight amount will suffice.  The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be."  Id. (quoting 1 Nimmer on Copyright § 1.08[C][1] (1990)).

The leading Supreme Court case in this area is Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991).  While Feist involved a compilation of facts—a telephone directory—its logic applies equally here.  See Atari Games Corp. v. Oman, 979 F.2d 242, 245 (D.C. Cir. 1992) ("An audiovisual work is analogous to the compilation of facts discussed in Feist . . . .").  The Feist Court drew a distinction between facts themselves (uncopyrightable) and factual compilations (potentially copyrightable):

> Factual compilations . . . may possess the requisite originality.  The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers.  These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws.  Thus, even a [telephone] directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement.
>
> This protection is subject to an important limitation.  The mere fact that a work is copyrighted does not mean that every element of the work may be protected.  Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.

Feist, 499 U.S. at 348 (citations omitted); see id. at 347.  The Court ultimately concluded that the telephone directory at issue was not copyrightable but was rather one of those few works "in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent."  Id. at 359; see id. at 362–64.  The directory publisher's choice to include individuals' name, town, and number "could not be more obvious," and its arrangement of these listings in alphabetical order was "an age-old practice" that was "not only unoriginal, [but] practically inevitable."  Id. at 362–63.

Against this backdrop, Daily Caller maintains that RWM's videos "generally feature a short preview followed by a chronological selection and arrangement of the underlying third-party footage to show the newsworthy event," and argues that this selection "does not merit copyright protection because it is 'obvious' and 'practically inevitable' when cutting down hours of police body camera or dash camera footage to feature the newsworthy event itself."  MTD at 18–19.  This mischaracterizes the news videos and RWM's claimed copyrightable authorship therein.  RWM does not appear to claim originality based principally on its previews or title sequences, and its videos do more than simply crop a single public-record video down to show the newsworthy event.  Rather, RWM generally obtains multiple different videos of the same event and then edits these videos together to tell a story.  See Compl. ¶ 13; RWM Ex. 1; Video Exs.  For example, in the video RWM submitted along with its complaint, RWM wove together footage from three police body cameras to tell the story of a DUI evaluation and arrest.  See RWM Ex. 1.  RWM's video cuts between the three video feeds scores of times for dramatic effect—for example, closeups of the impaired driver speaking with the officer administering the field sobriety test, wider-angle shots when she is attempting the tests, and at least one zoomed-in shot for emphasis.  See id.

The Court thus rejects Daily Caller's categorical argument that RWM's videos lack copyrightable authorship because they only reflect a focus on the "newsworthy event" or a

"chronological" arrangement of information.  To the extent that Daily Caller believes that RWM's individual editing decisions to weave videos together are so devoid of a "creative spark" as to not clear the "extremely low" threshold for copyrightable authorship, Feist, 499 U.S. at 345, it may raise those arguments at summary judgment.[4]  Further information on RWM's creative process and the source materials it utilizes may also inform any such inquiry.  See Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 674, 682–83 (2d Cir. 1998) ("[C]reativity in selection and arrangement . . . is a function of (i) the total number of options available, (ii) external factors that limit the viability of certain options and render others non-creative, and (iii) prior uses that render certain selections 'garden variety.'"); see also 2 Patry on Copyright ("Patry") § 3:66 (March 2024 Update).

### ii.    Copying of Original Elements

Daily Caller's third and fourth arguments take aim at the second element of an infringement claim: the need to show "the defendant's copying of original elements of the work."  Am. Soc'y for Testing & Materials, 82 F.4th at 1267.  This element has two components: "[t]he plaintiff must show not only that the defendant actually copied the plaintiff's work, but also that the defendant's work is 'substantially similar' to protectible elements of the plaintiff's work."  Sturdza v. United Arab Emirates, 281 F.3d 1287, 1295 (D.C. Cir. 2002).  "The first sub-element is generally referred to as 'actual' or 'factual' copying and the second is generally referred to as 'improper' or 'actionable' copying."  Prunte v. Universal Music Grp., 699 F. Supp. 2d 15, 22 (D.D.C. 2010), aff'd, 425 F. App'x 1 (D.C. Cir. 2011); see also 4 Nimmer on Copyright ("Nimmer") § 13D.02 (2024).  Daily Caller argues that RWM has not plausibly alleged either element.

---

[4] The Court notes that RWM's works appear to vary in the number of editing decisions involved—some works appear to involve scores if not hundreds of video cuts, while others rely on one video feed for longer periods of time.  See Video Exs.

As to actual copying, Daily Caller maintains that RWM "fails to sufficiently allege any type of access to the Works because [RWM] does not allege (1) any particular chain of events establishing that Daily Caller accessed any of the Works or (2) that any of [RWM's] Works were widely disseminated." MTD at 21 (internal quotation marks omitted). This argument is wide of the mark. Demonstrating a defendant's access to an allegedly copied work—whether through the work's widespread dissemination or otherwise—is a form of <u>indirect</u> proof of copying, utilized to make out a prima facie case in the many actions where plaintiffs "lack direct evidence of actual copying." Nimmer § 13D.05[A]. But here there <u>is</u> direct evidence of actual copying. Daily Caller appears to have made identical copies of portions of RWM's videos. <u>See</u> RWM Ex. 1; Video Exs. Indeed, as Daily Caller admits and the Court's review confirms, Daily Caller's allegedly infringing videos generally still include RWM's watermark. <u>See</u> MTD Reply at 21; Video Exs.; <u>see also</u> Nimmer § 13D.04 (noting that the paradigmatic form of direct evidence is "defendant's admission that he copied," and that direct evidence can also consist of "anything else demonstrating that defendant accessed the protected work and extracted content from it"). Arguments about indirect forms of proof are thus beside the point.

As to actionable copying, Daily Caller reiterates a version of its argument that RWM lacks copyrightable authorship in its works. The actionable copying inquiry consists of two steps:

> The first requires identifying which aspects of the artist's work, if any, are protectible by copyright. . . . Once unprotectible elements . . . are excluded, the next step of the inquiry involves determining whether the allegedly infringing work is "substantially similar" to protectible elements of the artist's work. "Substantial similarity" exists where the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.

<u>Sturdza</u>, 281 F.3d at 1295–96 (internal quotation marks omitted). Daily Caller again argues that RWM has no protected interest in the underlying public-record videos, that RWM's protected

expression consists mainly of its preview clips and title sequences, and that the "chronological selection" of public-record video footage is not protected.  MTD Reply at 19; see id. at 11–19.[5] The Court rejects this argument for the reasons already stated above.  In short, RWM has plausibly alleged both that its weaving together of various videos to tell a story is itself copyrightable authorship and that Daily Caller's exact copies of portions of these videos (including the video cuts and other creative decisions) is actionable copying.  See Nimmer § 13.03[A][1] ("If such duplication is literal or verbatim, then clearly substantial similarity results.").[6]

*          *          *

The Court is not persuaded by Daily Caller's four challenges to RWM's copyright infringement claims and will thus deny Daily Caller's motion to dismiss these claims.

### C.  DMCA Claims

RWM also asserts claims under § 1202(b)(1) and (b)(3) of the Digital Millenium Copyright Act.  See Compl. ¶¶ 33–43; Opp'n at 33.  Congress passed the DMCA in 1998 to address the risks that new digital technology posed to copyright protection.  See Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 458–59 (2007).  As relevant here, the statute contains the following prohibition:

> (b) Removal or Alteration of Copyright Management Information.—No person shall, without the authority of the copyright owner or the law—
>
>> (1) intentionally remove or alter any copyright management information,
>>
>> . . . or
>>
>> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information

---

[5] In its opening brief, Daily Caller primarily faulted RWM for not more directly identifying Daily Caller's allegedly infringing works.  MTD at 22–24.  Given that Daily Caller ended up providing the allegedly infringing videos for the Court's consideration, it shifted course in its reply brief to the above argument.

[6] As with Daily Caller's related copyrightable authorship arguments, Daily Caller remains free to advance work-specific actionable copying arguments at summary judgment if it believes that certain of its allegedly infringing works do not in fact copy protected aspects of the associated RWM work.

> has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).  Copyright management information ("CMI") is various information "conveyed in connection with copies" of copyrighted works, including the title, author's name, terms and conditions of use, and "other information identifying" the work or the author.  Id. § 1202(c).  Notably, the above prohibition contains dual scienter requirements: the defendant must have the requisite scienter both as to the specific act (intentionally removing or altering CMI, or distributing works with knowledge of previous removal) and must also (in the civil context) have "reasonable grounds to know" that the act will "induce, enable, facilitate, or conceal an infringement."  Id. § 1202(b); see Nimmer § 12A.10.

Daily Caller advances two arguments as to why RWM has failed to plausibly allege a violation of § 1202(b).  First, Daily Caller maintains that RWM has not alleged the requisite mental state.  See MTD at 27–30.  Second, Daily Caller relies on a line of district court case law holding that a DMCA claim only lies where a defendant makes an "identical copy" of a plaintiff's work.  See id. at 30–32.  Neither argument is persuasive.

As to scienter, Daily Caller principally argues that RWM has failed to plausibly allege that any removal or alteration of CMI had the requisite nexus to an infringement.  See MTD at 28–30.  Daily Caller maintains that this link is missing because RWM has not plausibly alleged any copyright infringement by Daily Caller.  Id. at 30; MTD Reply at 20–21.[7]  The Court has reached

---

[7] In its opening brief, Daily Caller also argued that the complaint lacked allegations that Daily Caller's alleged removal or alteration of CMI would facilitate infringement "by any third parties."  MTD at 29.  That is beside the point.  RWM's complaint makes crystal clear that the asserted DMCA violations are based on acts allegedly taken by Daily Caller to facilitate and conceal its own infringements.  See Compl. ¶¶ 35–40; MTD Opp'n at 34–35 (making this argument).  Daily Caller tacitly concedes the argument in its reply brief.  See MTD Reply at 20–21.

the contrary conclusion, see supra Section I.B, so this argument is not a basis for dismissal of RWM's DMCA claims.

Daily Caller's other scienter arguments fare no better. Daily Caller points to the fact that it challenged RWM's YouTube takedown notices, suggesting that this reflects an innocent mind and a lack of knowledge that any removal or alteration of CMI had the requisite link to infringement. MTD at 30; see Compl. ¶ 21. Even accepting Daily Caller's questionable premise, this sole consideration does not displace the weight of RWM's other well-pleaded allegations that Daily Caller acted with the requisite knowledge. See Compl. ¶¶ 21, 35–40. Daily Caller also argues that it "retained Plaintiff's watermark" in each of the allegedly infringing videos, such that there was no removal of CMI (or at least no removal of CMI with intent to conceal an infringement). MTD Reply at 21. Again, this reads RWM's complaint too narrowly: the complaint alleges the removal of various forms of CMI, including the video titles and title sequences. See Compl. ¶¶ 21, 34. The complaint also alleges that RWM's watermark was removed in at least some instances. Id. ¶ 24. And RWM's watermark, as retained, is not so clear as to defeat any plausible allegation of intentional removal or alteration of other CMI: the watermark is generally only visible for brief moments. See Video Exs.

Daily Caller's second argument is that a DMCA claim only lies where a defendant makes an "identical copy" of the underlying work and then removes CMI—and that here, Daily Caller is only alleged to have copied "portions" of RWM's videos. See MTD at 30–32. This argument appears to be grounded in the DMCA's definition of CMI as information "conveyed in connection with copies . . . of a work," 17 U.S.C. § 1202(c) (emphasis added), and the statute's prohibition on "distribut[ing] . . . copies of works" with knowledge that CMI has been removed or altered, id. § 1202(b)(3) (emphasis added).

Daily Caller relies heavily on one side of a nascent district-court split regarding this language.  See MTD at 31; Def.'s Suppl. Auth. at 4–5.  Some courts have held that no DMCA violation exists where an allegedly infringing work is not an "identical copy" of the original but rather is a derivative work or recreates aspects of the original work's protected expression.  See Kirk Kara Corp. v. W. Stone & Metal Corp., Civ. A. No. 20-1931 (DMG), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (collecting cases); see also, e.g., Tremblay v. OpenAI, Inc., Civ. A. No. 23-03223 (AMO), 2024 WL 557720, at *5 (N.D. Cal. Feb. 12, 2024); Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC, 672 F. Supp. 3d 1035, 1057 (S.D. Cal. 2023).  Put differently, "[w]hile it may be unlawful [i.e., constitute infringement] to recreate another's work . . . this conduct does not necessarily implicate the DMCA" if CMI was not actually removed from an identical copy of the original version.  Tremblay, 2024 WL 557720, at *5.  But other courts have held that a DMCA claim may lie under such circumstances.  See, e.g., ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc., 667 F. Supp. 3d 411, 426–27 (S.D. Tex. 2023); GC2 Inc. v. Int'l Game Tech., 391 F. Supp. 3d 828, 842–44 (N.D. Ill. 2019).  The Court need not engage in this debate, which is ultimately a bit of a red herring here.  The question in this case is not whether a derivative work or an independent recreation can support a DMCA claim, but rather whether an exact copy of portions of an original work can.

The Court answers that narrower, distinct question in the affirmative.  To begin, nothing in § 1202(b) requires precise equivalence between the work from which CMI is removed and the allegedly infringing work.  Nor does the Copyright Act's definition of "copy" confine the sweep of that term to a copy in full as opposed to in part.  See 17 U.S.C. § 101.  What's more, the statute defines "fair use of a copyrighted work, including such use by reproduction in copies," with reference to, inter alia, "the amount and substantiality of the portion used in relation to the

copyrighted work as a whole"—suggesting that partial copies are still copies.  Id. § 107.  There is also a practical point: it would be odd if a defendant could evade DMCA liability by removing or altering CMI in a copied work but only disseminating 99% rather than 100% of that work.  See MTD Opp'n at 35.  Ultimately, the Court agrees with a leading treatise that the arguments requiring perfect identity under these circumstances "fail[] to withstand scrutiny."  Nimmer § 12A.10.  Hence, the Court rejects Daily Caller's categorical argument that exact copies of portions of a video can never support a DMCA claim.[8]

The Court will thus also deny Daily Caller's motion to dismiss as to the DMCA claims.

## II.   Motion to Refer

The Court now turns to Daily Caller's second motion: its motion to refer RWM's copyright registrations to the Register of Copyrights.  Recall that, to demonstrate that a copyright is invalid and thus cannot serve as the basis for an infringement suit, a defendant must show (1) that "inaccurate information was included on the application," (2) the applicant had "knowledge" of the inaccuracy, and (3) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).  In 2008, apparently provoked by a circuit court's mistaken understanding of Copyright Office practices, see Nimmer § 7.20, Congress added a new provision:

> In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court

---

[8] Daily Caller again advanced a categorical argument rather than work-specific arguments.  To the extent that Daily Caller believes the DMCA analysis differs with respect to any of the specific works at issue here, it is free to advance those arguments at summary judgment.

The Court also notes that Daily Caller advanced several new arguments in its reply brief.  Daily Caller argues that any copies (even if not identical) must be at least substantially similar to give rise to DMCA liability.  See MTD Reply at 22.  The Court has concluded that threshold is met.  See supra Section I.B.ii.  Daily Caller further argues that it did not remove CMI, but rather simply omitted CMI (including the title sequences and previews) from the portions it allegedly copied.  The Court declines to consider this underdeveloped argument at this time.  See Fox v. Gov't of D.C., 794 F.3d 25, 29 (D.C. Cir. 2015) (reiterating that arguments first raised in reply briefs are generally forfeited).

whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(2).   The Register's response is advisory rather than binding.   See, e.g., Palmer/Kane LLC v. Gareth Stevens Publ'g, Civ. A. No. 15-7404 (GHW), 2017 WL 3973957, at *10 n.7 (S.D.N.Y. Sept. 7, 2017).

At issue here is the timing of the referral.[9]   Daily Caller contends that the Court must refer RWM's registrations to the Register now, based on Daily Caller's allegations of inaccurate information in RWM's application.   See MTR at 24–26.   Daily Caller asks the Court to refer two questions related to the alleged inaccuracies: whether the Register would have issued registrations had she known (1) that RWM's works were "previously published by [RWM] on YouTube" and (2) that "each Work was a compilation."   MTR at 38.

Daily Caller's position reflects a plausible reading of the statute, but not the best reading of the statute.   To be sure, § 411(b)(2) requires referral "[i]n any case in which inaccurate information . . . is alleged," and "alleged" is generally understood as lacking an associated evidentiary burden.   17 U.S.C. § 411(b)(2) (emphasis added); see Alleged, Black's Law Dictionary (12th ed. 2024) ("Asserted to be true as described."); Couch v. Verizon Commc'ns Inc., 105 F.4th 425, 432 (D.C. Cir. 2024) (noting distinction between allegations and "eventual evidentiary burden").   But the provision does not require referral "upon any allegation"; it requires referral "[i]n any case in which inaccurate information . . . is alleged."   17 U.S.C. § 411(b)(2) (emphasis added).   The "allegation" element is thus best understood as denoting the types of cases subject to the provision (and the fact that an evidentiary showing is not necessarily required)—not as a

---

[9] Daily Caller reiterates many of its motion-to-dismiss arguments regarding inaccuracy and knowledge in its motion to refer.   The Court has already determined that resolution of those issues is premature at this stage, so the sole question is whether Daily Caller's allegations (supported by some attached materials, but not a full factual record) are sufficient to trigger referral at this time.

mandatory trigger requiring immediate referral on any allegation.  That is, courts have discretion to determine at what point referral is appropriate.

Strong prudential considerations favor this reading.  To read the statute to require immediate referral on any allegation would be to open the door to significant "abuse" in the form of defendants' use of the referral provision "as a delay tactic" at the outset of proceedings. DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 625 (7th Cir. 2013); see also Nimmer § 7.20; Patry § 17:125.50.  Premature referrals could also strain "the Register's limited resources," particularly given the various cases where it turns out that the other two necessary conditions for invalidity—inaccurate information and knowledge of such—are not actually met.  Beatriz Ball, L.L.C. v. Barbagallo Co., 40 F.4th 308, 316 n.5 (5th Cir. 2022).  And the Register herself has endorsed this approach.  See Resp. of the Register of Copyrights to Req. Pursuant to 17 U.S.C. § 411(b)(2) at 12, Olem Shoe Corp. v. Wash. Shoe Co., Civ. A. No. 09-23494 (PCH) (S.D. Fla. filed Nov. 16, 2009), ECF No. 209 at 11–12 ("[B]efore asking the Register whether she would have refused to register a copyright . . . a court should feel free to determine whether there is in fact a misstatement of fact.").

It should come as no surprise, then, that the overwhelming weight of case law favors this reading.  The three circuits to have considered the question have all concluded that "courts can demand that the party seeking invalidation first establish that the other preconditions to invalidity"—that is, inaccuracy and knowledge—"are satisfied before obtaining the Register's advice on materiality."  DeliverMed Holdings, LLC, 734 F.3d at 625; see Beatriz Ball, 40 F.4th at 316 n.5; Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 52 F.4th 1054, 1064 (9th Cir. 2022), cert. denied, 143 S. Ct. 2583 (2023).  District courts are also virtually unanimous in their adoption of this more flexible approach.  See, e.g., Chic Home Design, LLC v. New Journey Grp., Civ. A.

No. 15-9468 (JPO), 2017 WL 3738775, at *4 n.2 (S.D.N.Y. Aug. 30, 2017); <u>Covetrus Inc. v. Actian Corp.</u>, Civ. A. No. 21-00097 (LEW), 2022 WL 17417289, at *3 (D. Me. Dec. 2, 2022).

Daily Caller does not meaningfully address this case law.  Instead, it relies on a single district court case from the Northern District of Mississippi.  That case, <u>Ronaldo Designer Jewelry, Inc. v. Cox</u>, Civ. A. No. 17-2 (DMB/DAS), 2019 WL 1795935 (N.D. Miss. Apr. 24, 2019), reasoned that the "plain meaning" of the term "alleged" requires referral whenever a movant "sets forth good-faith allegations" as to a registration's validity under § 411(b).  <u>Id.</u> at *4.  But as explained above, this Court concludes that "alleged" must be read in conjunction with the surrounding language—and that, so read, immediate referral is not mandatory.  <u>See Roberts v. Sea-Land Servs., Inc.</u>, 566 U.S. 93, 101 (2012) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context . . . ." (internal quotation marks omitted)).  And the Fifth Circuit, in which the <u>Ronaldo</u> court sits, subsequently endorsed the approach rejected by <u>Ronaldo</u>.  <u>See Beatriz Ball</u>, 40 F.4th at 316 n.5; <u>Energy Intel. Grp. v. Kayne Anderson Cap. Advisors, L.P.</u>, 948 F.3d 261, 278 (5th Cir. 2020).[10]

Here, there are still many open questions regarding inaccuracy and knowledge—the other two § 411(b)(1) requirements.  Hence, the Court declines to make a referral to the Register of Copyrights at this time.  The Court will accordingly deny Daily Caller's motion to refer without prejudice to Daily Caller's ability to renew the motion at a later date—likely in conjunction with summary judgment briefing.

---

[10] Daily Caller relies solely on <u>Ronaldo</u>, and the Court is not aware of any other cases following the <u>Ronaldo</u> approach.  Some language in <u>HealtheState, LLC v. United States</u>, 160 Fed. Cl. 91 (2022), can be read as supporting the <u>Ronaldo</u> view, but the <u>HealtheState</u> referral was still made after fact discovery closed.  <u>See id.</u> at 95–96.

## **Conclusion**

For the foregoing reasons, the Court will deny Daily Caller's motion to dismiss and its motion to refer to the Register of Copyrights.  An accompanying Order will issue on this date.

_____
/s/

JOHN D. BATES
United States District Judge

Dated: <u>August 14, 2024</u>